THE STATE, EX REL. ATTORNEY GENERAL, *v.* DENNY.

ATTORNEY GENERAL.—*Right to Collect and Sue.—Fees and Salaries.*—The act of March 10th, 1873, 1 R. S. 1876, p. 151, supplemental to the act of February 21st, 1855, 1 R. S. 1876, p. 149, providing "for the election, fixing the compensation, and prescribing the duties of Attorney General of" this State, authorizes that officer to collect at once, with or without suit, all amounts paid to any public officer of the State, or to any county officer, or to any other person, arising from any of the sources mentioned in section 9 of said act, and not paid over by such officer or person into the proper treasury, as required by law ; except fines, forfeitures, and property escheating or belonging to the State, which he can neither collect nor sue for until, on the expiration of a year from the accruing of a cause of action therefor in favor of the State, the proper prosecuting attorney has failed to collect, or institute suit for, the same.

SAME.—*Compensation.*—Under said section 9, the Attorney General is entitled to retain, for himself, out of sums so collected by him or his assistants, the commissions specified therein.

SAME.—*Assistants and their Compensation.*—Under section 11 of that act he is authorized to appoint as many assistants as he may deem proper ; and to pay them, out of sums collected by them, ten per centum thereof as their compensation.

SAME.—*Debt due State from United States.*—Under said section 9, the Attorney General was authorized to collect any sum due from the United States to this State, for moneys expended by the latter in the war of the Rebellion, and to retain out of the same, as compensation, his proper commissions.

SAME.—*Set-Off.*—Where, in making such collection, there was a valid credit in favor of the United States, the Attorney General was entitled to calculate his commissions, not on the whole amount, but simply on the residue, of the claim in favor of the State.

From the Marion Circuit Court.

*T. W. Woollen*, Attorney General, *G. B. Sleeth* and *J. D. Works*, for appellant.

*A. L. Roache, E. H. Lamme, G. G. Reily* and *J. C. Denny*, for appellee.

HOWK, J.—This was a suit by the appellant, against the appellee, James C. Denny, formerly the Attorney General of this State, for the recovery of certain moneys belonging to the State ; which moneys, it was alleged, the appel-

The State, *ex rel.* Attorney General, *v.* Denny.

lee had received as such Attorney General, during his term of office, and had failed and refused to pay over or account for to the proper officers of the State.

The appellant's complaint contained three paragraphs, to each of which the appellee demurred, upon the ground that it did not state facts sufficient to constitute a cause of action. These demurrers were severally sustained by the court, and to each of these decisions the appellant excepted. The State, by its Attorney General, declining to amend either paragraph of its complaint and electing to stand thereon, judgment was rendered for the appellee.

From this judgment, the State has appealed to this court, and has here assigned, as errors, the several decisions of the court below, in sustaining the appellee's demurrers to each paragraph of the complaint. We will separately consider and decide upon the sufficiency of the facts stated in each paragraph of the complaint, in their enumerated order, to constitute a cause of action.

1. In the first paragraph of the complaint, it was alleged, in substance, that at the October election, 1872, the appellee was duly elected Attorney General of the State of Indiana, and on the 7th day of November, 1872, he duly qualified and entered upon the duties of his office, and served therein for the term of two years from the day last named, as such Attorney General; that during his said term, and after the passage of the act of March 10th, 1873, in reference to the powers and duties of the Attorney General, the appellee, assuming to act under the provisions of section 9 of said act, collected of public officers of this State and county officers and other persons, who, the appellee had ascertained, had received moneys belonging to the State, for unclaimed witness fees, court docket fees, moneys unclaimed in estates or guardianships, fines and forfeitures, and moneys that had escheated to the State for the want of heirs, the sum of

one hundred thousand dollars, which moneys had been collected by such officers and persons for the State, and had not been paid .into the proper treasury, according to law, and which moneys were all collected by the appellee, as such Attorney General, without suit, but when so collected they were being held by such officers and persons beyond the time when, by law, they should have paid the same into the proper treasury; that the appellee, out of the said moneys so collected, paid to his assistants in making such collections ten per cent. of the amount so collected, under the provisions of section 11 of said act, and retained for his own compensation the fees mentioned in said section 9, to wit, twenty per cent. on the first one thousand dollars, ten per cent. on sums not exceeding two thousand dollars, and on all sums exceeding two thousand dollars five per cent.; that said fees, so paid to his assistants by the appellee, were retained by him, amounting in the aggregate to the sum of twenty thousand dollars, which fees were illegally paid out and retained by the appellee, and that the said sum should have been paid into the proper treasury for the use and benefit of the State and its trust funds, which the appellee had hitherto refused to do, to the appellant's damage in the sum of twenty thousand dollars.

From this summary of the facts alleged in the first paragraph of the complaint, it will be readily seen, we think, that the questions presented by the alleged error of the court, in sustaining the appellee's demurrer to this paragraph, depend for their proper decision upon the construction which must be given to the statutory provisions defining the duties and prescribing the compensation and fees of the Attorney General and his assistants.

The office of Attorney General for the State of Indiana was first created by an act providing for the election, fixing the compensation, and prescribing the duties of such

Attorney General, approved February 21st, 1855. By section 4 of this act, it was made the duty of the Attorney General to prosecute and defend all suits that might be instituted by or against the State, the prosecution or defence of which was not already provided for by law, whenever notified ten days of the pendency thereof by the clerk of the court in which such suits were pending, and whenever required by the Governor, or a majority of the officers of State, in writing, to be furnished him within a reasonable time for the purposes therein contemplated. By an act which became a law on the 3d day of June, 1861, this section 4 was amended by adding thereto the following provision : "And he shall prosecute and defend all criminal or State prosecutions that are now or hereafter may be pending in the Supreme Court of the State of Indiana."

By section 6 of the original act of February 21st, 1855, it was made the further duty of such Attorney General, whenever required so to do by any officer of State, to furnish the applicant a written opinion touching any point of law concerning the official duties of such officer, and to either branch of the General Assembly when requested so to do by a resolution thereof asking an opinion concerning the validity of an existing or proposed law, or conflicts thereof.

By section 7 of said original act, it was provided that " Such Attorney General shall receive for his compensation the sum of one thousand dollars per annum, to be audited and paid quarterly out of the State Treasury." By an act, approved June 3d, 1861, this section 7 was also amended, by making thereto the following addition : "And shall in addition thereto be allowed a docket fee of five dollars in each criminal or State prosecution by him so prosecuted or defended in the Supreme Court, to be taxed against the adverse party, and collected as a part of the costs against such adverse party: *Provided*, That in no event shall the docket fee be paid by the State."

Such were the duties and such the compensation of the Attorney General of this State, and such they remained from June 3d, 1861, until March 10th, 1873. By an act entitled "An act supplemental" to the aforesaid act of February 21st, 1855, and repealing the said amendatory act of June 3d, 1861, and "prescribing additional duties of clerks of circuit courts, and prosecuting and district attorneys," approved March 10th, 1873, the office of Attorney General of this State was in a great measure reconstructed, and the duties, salary, fees and emoluments of the office were all largely increased. Acts 1873, p. 18 ; 1 R. S. 1876, p. 151. By section 1 of this supplemental act, the Attorney General was required to reside at, and keep an office in, the city of Indianapolis, and to be in said office, in person or by deputy, during business hours on all business days, unless engaged in court or elsewhere in the service of the State.

Sections 2, 3, 9 and 11 of this supplemental act are the only ones which seem to have an especial bearing on the questions presented for decision in this case, and these sections we will set out in full, in this connection, as follows :

" Sec. 2. That in all cases where the prosecuting attorneys have failed for one year after the assessment of any fine or the forfeiture of any recognizance, or may hereafter for one year after the assessment of any fine or forfeiture of any recognizance, fail to institute proceedings to collect and pay into the proper treasury, any fine or forfeiture, it shall be the duty of the Attorney General to institute proceedings and collect and have paid into the proper treasury all such fines and forfeitures.

" Sec. 3. That it shall be the duty of the Attorney General to keep a record of all opinions given by him to the Governor, the General Assembly, or to any of the State officers, and an accurate account of all moneys collected or received by him under the provisions of this act, in a sub-

stantially bound book, and to pay over to the proper officer all money collected at the end of each month.

"Sec. 9. It shall be the further duty of the Attorney General to ascertain from time to time the amounts paid any public officer of the State, or any county officer, or other person, for unclaimed witness fees, court docket fees, license, money unclaimed in estates or guardianships, fines or forfeitures, or moneys that escheat to the State for want of heirs, or from any other source where the same is by any law required to be paid to the State, or any officer in trust for the State; and in all cases where the officers whose duty it shall be to collect the same shall fail, neglect or refuse for twelve months after the cause of action in favor of the State shall have accrued, or shall fail, neglect or refuse to sue for and proceed to recover any property belonging to or which may escheat to the State, the said Attorney General shall institute or cause to be instituted and prosecuted all necessary proceedings to compel the payment of or recovery of any such property. For all collections made or property recovered, under the provisions of this section, the Attorney General shall be allowed a commission of twenty per cent. on the first thousand dollars, ten per cent. on sums not exceeding two thousand dollars, and on all sums exceeding two thousand dollars five per cent. And for the purpose of enabling the Attorney General to ascertain the facts herein contemplated, it is hereby made the duty of the officers having the custody of any such moneys, to report all the facts to said Attorney General upon oath or affirmation pertaining thereto upon his demand in person, by deputy, or in writing, and any such officer failing to render such information upon such demand, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding one hundred dollars.

"Sec. 11. That the Attorney General may employ and

have such assistants to aid him in the discharge of his du-
ties imposed upon him by the provisions of this act, and
pay to them out of the sums so collected by such person
or persons, a sum not exceeding ten per cent. of the sum
or sums so collected."

In this connection, it may be remarked that, by section
6 of this supplemental act, the annual salary of the Attor-
ney General was increased to the sum of three thousand
dollars, payable quarterly, and he was allowed a docket
fee of ten dollars, in all cases in which he might appear for
the State, to be taxed against the losing party with the
costs in the cause: "*Provided*, That in no case shall such
docket fee be taxed against the State of Indiana."

We pass now to the consideration of the questions pre-
sented for our consideration by the record of this cause, by
the errors assigned thereon, and more especially by the
briefs of the learned counsel of both the appellant and the
appellee. By way of preface, we may properly remark
that the distinguished counsel who represent the appel-
lant in this court have presented, in and by their briefs, a
case differing somewhat from the case made by the appel-
lant's complaint; but, as we understand that the appellee
as well as the appellant desires this court to pass upon the
case as here presented, we will consider and decide those
questions relating to the duties and compensation of the
Attorney General and his assistants, which depend for
their proper decision upon the construction to be
given to the statutory provisions already quoted in this
opinion. We do this the more readily in this case,
because doubts have arisen and been expressed in regard
to those questions, and because it seems to us that the in-
terests of the State, and of the State, county and township
officers, alike demand and will be subserved by the ascer-
tainment and determination of the powers and duties of
the Attorney General, under the law, and the removal of

all doubts in relation thereto, and in relation to the fees of himself and of his assistants.

It must be conceded, that there is some uncertainty and confusion in the provisions of the supplemental act of March 10th, 1873. Where, from uncertain phraseology or inaccurate verbiage, the meaning of a statute is not apparent, it is the province of this court, as the court of last resort in this State, to construe the provisions of the statute in question, and to determine therefrom what the law is and was intended to be. In such cases, the legislative intent, when it can be arrived at, governs and controls the construction of the statute. One of the oldest and best rules for the construction of statutes is thus stated by Blackstone: "There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy." 1 Bl. Com., Cooley's ed., p. 87; *The City of Huntington* v. *Pease*, 56 Ind. 305. This rule of construction is applicable to the supplemental act now under consideration, and will aid us much in arriving at the true intent and meaning of that act.

As we have seen, the act of February 21st, 1855, creating the office of Attorney General, had been in force without change, except in two unimportant particulars, for eighteen years, when the General Assembly, by this supplemental act, in a manner recreated, reconstructed and localized the office, trebled the salary of its incumbent and doubled his docket fees, and authorized him to appoint clerks and deputies on liberal salaries, payable out of the State treasury, and empowered him to employ an unlimited number of assistants, and pay them large commissions out of moneys belonging to the State. What was the cause, what was the purpose, and what were the circumstances, which induced the Legislature to make this rather remarkable change in the office of the Attorney General?

The proper answers to this three-fold question will, we think, elucidate the act under consideration, and aid us much in its construction.

When the General Assembly of this State convened in 1873, the attention of that body was specially directed, by the proper State officers, to the imperfections of the statutes which required the taxation of the docket fees to aid in defraying the expenses of the judiciary, or in reimbursing such expenses, and the ultimate payment of such fees, and all unclaimed fees, into the proper treasury; and it was claimed and represented that hardly the one-fourth part of the docket fees, which ought to have been, and probably had been, taxed and collected under the laws then in force, and amounting, as claimed, to an aggregate sum of about one hundred and seventy thousand dollars, had ever been paid into the proper treasury. In the report of the Auditor of State, then made, it was said, in relation to the docket fee, that, "If the fee has been taxed and collected, as the law requires, the probability is that it has for the most part only proven so much of an additional fee to clever county clerks." It was also said that the statute then in force, in regard to docket fees, had "proven a practical failure;" and it was further said that "The returns to the treasury of unclaimed fees are even more meagre and unsatisfactory than the docket fees." The report of the Auditor of State, then made, on the subject now under consideration, closed as follows: "With the limited amount of assistance, with which this office is provided, and with no power to employ additional aid, or pay for legal services, it is impossible for the Auditor of State to institute and push to success, in the various counties, the necessary means to correct these evils."

The specific appropriation acts of December 21st, 1872, and of March 10th, 1873, were both of them passed by the same General Assembly, which also passed the said sup-

plemental act in relation to the Attorney General of this State. Both of said acts contained large appropriations to different attorneys, in payment for professional services before that time rendered by them on behalf of the State, under the employment of the different State officers. So that we may well conclude, as it seems to us, that the members of that General Assembly had personal and actual knowledge of the absolute necessity, then existing, for a complete change in the administration of the legal business of the State, and for the placing of such business and all its details, where they properly belonged, under the control and management of the Attorney General, as the highest law officer of the State. Such were the objects and purposes, we think, of the Legislature, in the passage of the supplemental act of March 10th, 1873; and to secure zeal and diligence in their attention, even to the minutiæ of the State's legal business, it was wisely provided that the compensation of the Attorney General, and of his assistants, should be largely dependent upon their success.

The learned counsel, who have briefed this cause on behalf of the appellant, have placed a construction upon section 9, above quoted, of the supplemental act, which is antagonistic, we think, to the purpose, meaning and intention of the act, and which, for this reason, fails to meet with our approval. They claim, as we understand them, that the duty of the Attorney General, under this section, is limited to the ascertainment merely, from time to time, of "the amounts paid to any public officer of the State, or any county officer, or other person, for unclaimed witness fees, court docket fees, license, money unclaimed in estates or guardianships, fines or forfeitures, or moneys that escheat to the State for want of heirs, or from any other source where the same is by any law required to be paid to the State, or any officer in trust for the State." The learned counsel further claim, as we understand them, that

the Attorney General, having ascertained the amounts so paid to any State or county officer, or other person, of moneys belonging to the State or to its trusts funds, has discharged his full duty in that regard, under the statute; that he can not collect, either with or without suit, from such State or county officer, or other person, the amounts so paid to such officer or person of the aforesaid public moneys; and that, as the necessary and logical sequence of these positions, he was not entitled to and should not receive, for collecting, with or without suit, from such State or county officer, or other person, the amounts so paid to such officer or person of the said public moneys, the commissions authorized and provided for in said section 9 of the statute, or any other commissions.

We are clearly of the opinion that such a construction of said section 9 is not required by its language, and would defeat and render wholly nugatory the chief object, purpose and intention of the supplemental act. It was well understood by the members of the General Assembly that large amounts of these public moneys, belonging to the State and its trust funds, were in the hands of State and county officers, and other persons, and had been there long beyond the time when, by law, they should have been paid into the proper treasury; and that the holders of these moneys were, for the most part, " clever," sociable and influential men, whom no lawyer would wish to sue for any ordinary fee or commission. These were the amounts of public moneys, as it seems to us, which the Legislature had chiefly in view, in the passage of the said supplemental act; and it was to secure the collection of these amounts and their payment into the proper treasury, which induced the law-making power to provide such liberal commissions for the Attorney General in said section 9, and for his assistants in said section 11 of said act, but payable only, in either case, out of the amounts so collected.

It is the true intent and meaning of this supplemental act, as we construe its provisions, that the Attorney General of this State shall be and is thereby authorized to collect at once, with or without suit, all amounts paid to any public officer of the State, or any county officer, or other person, and not paid by such officer or person into the proper treasury, as required by law, for unclaimed witness fees, court docket fees, license, money unclaimed in estates or guardianships, fines or forfeitures, or moneys that escheat to the State for want of heirs, and all amounts due from any other source, where the same was, by any law, required to be paid to the State, or any officer in trust for the State; *except* as to fines, forfeitures, and property escheating or belonging to the State, which he may not collect, with or without suit, or sue for the recovery of, until after the expiration of one year from the time the cause of action has accrued therefor, and then only in the event that the proper prosecuting attorney has failed, neglected or refused, for and during the said year, to collect the same, or to institute proceedings for the recovery thereof; and that, for all collections made or property recovered by him, with or without suit, under the provisions of said section 9, as we construe it, the Attorney General of this State shall be and is thereby allowed the commissions provided for and specified in said section. *Moore* v. *The State, ex rel.,* 55 Ind. 360.

Under this construction of said section 9, it is very clear, we think, that the first paragraph of the appellant's complaint in this action did not state facts sufficient to constitute a cause of action against the appellee. This paragraph simply charged that the appellee had paid his assistants, for making collections of moneys belonging to the State, ten per cent. of the sum or sums collected by his respective assistants, out of the sum or sums so collected by them respectively. It was further charged in said

paragraph, that the said payments so made by the appellee, as Attorney General, to his assistants, were illegally made; but we fail to discern wherein or how they were illegal. In and by section 11 of the supplemental act, as above quoted, the appellee, as the Attorney General, was expressly authorized to employ and have assistants to aid him in the discharge of his duties imposed upon him by the provisions of said act, and to pay them, " out of the sums so collected by such person or persons, a sum not exceeding ten per cent. of the sum or sums so collected." This language, as it seems to us, is too plain for construction. The court did not err, we think, in sustaining the demurrer to the first paragraph of the complaint.

2. In the second paragraph of the complaint, it was alleged that the appellee was elected, qualified as, and discharged the duties of, the Attorney General of this State, for the same term, and in much the same language, as stated in the first paragraph; and it was then alleged, that, during his said term of office, and after the passage of the supplemental act of March 10th, 1873, in relation to the powers and duties of the Attorney General, the appellee, assuming to act under the 9th section of said act, collected of the United States, on account of the claim of the State for expenses incurred in the war of the Rebellion, the sum of $165,136.97, on which sum he retained the sum of $8,456.84, as his commissions under the provisions of section 9 of said act, and failed and refused to pay the same into the treasury of the State; that the appellee ought to have paid the entire sum, so collected by him, into the State treasury, and that his deduction of his pretended commissions was illegal, and that he was indebted to the appellant in the said sum so retained by him, with interest thereon.

Under the construction we have given section 9 of the supplemental act of March 10th, 1873, in considering the

first paragraph of the appellant's complaint, it seems to us that the court did not err in sustaining the demurrer to the second paragraph of the complaint. It was the duty of the Attorney General, and it certainly was not the duty of any other officer of this State, under the statutes then in force, to collect the money due the State from the United States, mentioned in said second paragraph. It would seem from the allegations of this paragraph, that the appellee, as the Attorney General, had collected the entire claim due the State from the United States ; and, having done so, it seems to us that he was clearly entitled to his full commissions, under the provisions of said section 9 of the act, on the entire amount of such collection. It does not appear from the averments of the paragraph, that the appellee, as Attorney General, had retained any more of such collection than his commissions thereon, as the same were fixed in and by the statute ; and therefore we are unable to discern the alleged illegality of his deduction and retainer of his commissions, or that he became and was indebted to the appellant on that account for the amount of money so deducted and retained by him as his commissions. Upon the facts stated in the second paragraph of the complaint, the appellee's commissions were fixed by the statute, as we construe it, at the precise sum retained by him ; and however large this sum may appear to be, the law allowed the same to the appellee, and he had the legal right to deduct and retain the amount, and the appellant can not recover it back. The demurrer to the second paragraph of the complaint was, we think, correctly sustained.

3. The appellant alleged, in the third paragraph of the complaint, substantially as stated in the first paragraph thereof, that the appellee had been elected the Attorney General of this State, at the time and for the term stated in said first paragraph, and had qualified and entered upon

the discharge of his duties as such Attorney General; that the appellee, assuming to act under the provisions of said section 9 of the supplemental act of March 10th, 1873, in relation to the powers and duties of the Attorney General, collected of the United States, on account of the claims of this State for expenses incurred in the war of the Rebellion, certain moneys, as follows :   The sum of $165,136.97 was allowed the State, on explanations, affidavits and certificates filed by the appellee and his assistants, from which was deducted the sum of $52,869.41, erroneously paid to the State on a special settlement of its war claims, on November 10th, 1868, leaving a balance of $112,267.56, which was paid to the State; that said sum of $52,869.41 stood as a debt against this State, in favor of the United States, before the allowance to this State of the first named sum, and was not connected with, and did not form any part of, the settlement so made; that in computing his commissions on the collection of said moneys from the United States, the appellee counted the same on the whole amount of said sum of $165,136.97, making the sum of $8,-456.84, when he was only entitled to compute the same on the said sum of $112,267.56, making the sum of $5,513.35, and being a difference of $2,943.49, which latter sum the appellee neglected and refused to pay to the appellant. Wherefore, etc.

It seems to us that the court erred in sustaining the appellee's demurrer to this third paragraph of the complaint. We do not doubt that it became and was the duty of the appellee, as the Attorney General of this State, under the provisions of the said supplemental act of March 10th, 1873, to collect from the United States the moneys due this State for expenses incurred during the war of the Rebellion ; nor do we doubt that he was lawfully entitled to charge and retain, out of the moneys so collected, the precise commissions thereon as specified and fixed in and by

section 9 of said act. But it can not be said, as it seems to us, under the allegation of the third paragraph of the complaint, that the appellee, as the Attorney General, had collected from the United States any larger sum than the sum of $112,267.56. The other sum of $52,869.41, mentioned in said paragraph, it was alleged therein, had been paid to this State on the 10th day of November, 1868, or about four years prior to the time when the appellee became the Attorney General. The fact that this latter sum was erroneously paid to the State, at the time the payment was made, can not affect the question we are now considering; for, even if it was an erroneous payment, it was none the less an actual payment to the State of that amount of money, made long before the appellee became the Attorney General. This latter sum was not due the State from the United States, and it was not collected by the appellee as Attorney General.

We are clearly of the opinion that the appellee could not lawfully charge commissions on this sum of $52,869.41, which he never collected, and retain such commissions out of other moneys collected by him for the State. It was alleged in the third paragraph of the complaint, in substance, that the appellee had charged commissions on this sum of $52,869.41, to the amount of $2,943.49, and had retained this latter amount of other moneys collected by him for the State, and had neglected and refused to pay the same to the appellant. In our opinion, the appellee's demurrer to the third paragraph of the complaint ought to have been overruled; and therefore, as to this third paragraph, the judgment of the court below must be reversed.

The judgment is reversed, at the appellee's costs, and the cause is remanded, with instructions to overrule the demurrer to the third paragraph of the complaint, and for further proceedings in accordance with this opinion.