## HORD v. THE STATE.

[No. 20,509. Filed January 10, 1907.]

1. CONTRACTS.—*Parties.*—*State.*—*Principal and Agent.*—*Statutes.*—The burden is upon the plaintiff, in an action against the State, to show a statute expressly or impliedly authorizing his employment, through its contracting officer, before he can establish a liability. p. 631.

2. OFFICERS.—*Public.*—*Dealings with.*—*Principal and Agent.*—*Notice.*—All persons dealing with a public officer are bound, at their peril, to take notice of the authority of such officer to bind his principal. p. 632.

3. SAME.—*Attorney-General.*—*Unauthorized Contracts.*—*Ratification.*—Contracts executed by the Attorney-General on behalf of the State, must be sanctioned by a statute, and if not, they are unauthorized and can be ratified only by the legislature. p. 632.

4. SAME. — *Attorney-General. — Assistants. — Compensation.*—*Statutes.*—Under §5670 R. S. 1881, Acts 1873, p. 18, §11, the Attorney-General had the legal right to employ assistants and to pay them for their services a sum not exceeding ten per cent of the amount of any moneys whatsoever collected by them for the State. p. 633.

5. SAME. — *Attorney-General. — Assistants. — Compensation.*—*Statutes.*—Under §§7692, 7693 Burns 1901, Acts 1889, p. 124, §§9, 10, the Attorney-General has the right to employ assistants and to pay them not to exceed ten per cent of the money collected by them, except that due from the United States to the State because of direct taxes paid by such State during the civil war. p. 637.

6. SAME.—*Attorney-General.*—*Assistants.*—*Tenure of Service.*—Under §§7692, 7693 Burns 1901, Acts 1889, p. 124, §§9, 10, the Attorney-General has no authority to appoint assistants, for the collection of money due to the State, who shall serve for a longer time than during his official term. p. 638.

7. SAME.—*Deputies.*—*Tenure.*—In the absence of a statute, the tenure of office of a deputy or assistant is, subject to removal at any time, for the term of office of the principal; and where such principal is reëlected, such deputies or assistants, to hold over, must be reappointed. p. 640.

8. STATUTES.—*Doubts.*—*Construction by Administrative Departments.*—*Usage.*—Where a statute is plain and free from doubt, the courts, in the construction thereof, will not resort to the

construction placed thereon by the administrative departments, nor can the meaning thereof be changed or varied by usage. p. 641.

9.  CONSTITUTIONAL LAW.—*Contracts.*—*Impairment.*—The protection of the federal Constitution does not extend to contracts until they are created.   p. 642.

From Superior Court of Marion County (G. T. 65,807) ; *John L. McMaster, Vinson Carter* and *Vincent G. Clifford (Pro tem.);* Judges.

Action by William B. Hord against the State of Indiana.   From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Addison C. Harris* and *Frank C. Cutter,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild* and *W. C. Geake,* for appellee.

JORDAN, J.—This action was commenced by appellant, William B. Hord, in the Superior Court of Marion County, Indiana, under §1419 Burns 1901, Acts 1895, p. 231, to recover a money judgment of over $80,000 against the State of Indiana, arising, as alleged, out of contract.   The complaint consists of two paragraphs.   Separate demurrers to each for insufficiency of facts were filed by the State. These demurrers were sustained, and thereupon appellant elected to abide by his complaint, and judgment was rendered that he take nothing and that the State recover costs. From this judgment he has appealed to this court, and by the errors assigned he challenges the ruling of the lower court upon the demurrers in question.   It is further assigned and argued by appellant's counsel that the State, in denying him compensation for his services and expenditure of moneys made by him, as alleged in the complaint, impairs the obligation of the contract set out in the complaint, and that this results in denying him the equal protection of the laws, and deprives him of his services and property without due process of law; all in violation of the provisions of the federal Constitution.   The first para-

graph of the complaint declares upon a written contract alleged to have been entered into by and between appellant and the State of Indiana, through its Attorney-General, on April 3, 1889, whereby appellant was employed to prosecute and collect from the United States for the State of Indiana certain claims known and denominated as "war claims." The second paragraph of the complaint counts upon a *quantum meruit,* and thereunder appellant seeks to recover against the State for services rendered by him at its request in the prosecution and collection of the aforesaid claims.

As a preliminary, the first paragraph of the complaint discloses the passage in 1861, by the congress of the United States, of certain acts for the purpose of indemnifying the several states of the Union for expenses incurred by each in defending the United States in the Civil War of 1861, etc. It is further shown that the State of Indiana, during the period of said war, expended for and advanced to the United States government large sums of money, amounting in the aggregate to $800,000; that after the close of said war the State, from time to time, made unsuccessful efforts to secure from the United States the payment, in whole or in part, of its said claims. It is further alleged that the State, although unsuccessful in the collection of these claims, insisted that large sums of money were due to it from the United States on account of these war claims, and accordingly, on March 5, 1889, the legislature passed a statute pertaining to the office of the Attorney-General and to the collection of the claims in question. It is averred in the pleading that these claims of the State against the United States government were provided for by a proviso, or provision, in section nine of said act (Acts 1889, p. 124, §7692 Burns 1901) in these words: "Provided, that the Attorney-General or his assistants shall not receive any commission or fees for or on account of the collection from the United States of the money paid by

the State of Indiana to the United States as direct tax during the War of the Rebellion; but for the collection of any other moneys due the State of Indiana from the United States he shall be allowed a commission of ten per cent on the amount collected." In the same connection the complaint avers that "it was said sum, among other claims, that by said act of the legislature the Attorney-General was authorized to employ aid and attorneys in the collection thereof, and to pay such aid and attorneys out of the sums so collected a sum not to exceed ten per cent of the amount collected." It further alleged that under the authority of said act of 1889 Louis T. Michener, the Attorney-General of the State, did appoint and employ appellant as attorney for the State of Indiana to collect the money due to it from the United States. This appointment was made by and under a written commission, issued to appellant, in the words and figures as follows:

"Indianapolis, April 3, 1889.
I, Louis T. Michener, Attorney-General of the State of Indiana, under and by the authority conferred on me by section ten of the act providing for the election, prescribing the power and duties, and fixing the compensation of the Attorney-General of Indiana, approved March 5, 1889 (Acts 1889, p. 124, §7693 Burns 1901), do hereby nominate, constitute, and appoint William B. Hord, of the city of Indianapolis, in the State of Indiana, my assistant to prosecute, establish, and secure any and all claims due or owing to the State of Indiana by the general government, except the money paid by the State of Indiana to the United States as a direct tax during the War of the Rebellion, and he is fully authorized and empowered to take any and all necessary proceedings to secure the same. . Louis T. Michener, Attorney-General of Indiana."

It is averred that on the same day that appellant was appointed by Attorney-General Michener as aforesaid, the State of Indiana entered into a written contract with him,

which contract is set out and made a part of the first paragraph of the complaint and is as follows, to wit:

"Whereas, Louis T. Michener, Attorney-General of the State of Indiana, has this day appointed William B. Hord, of the city of Indianapolis, in the State of Indiana, assistant to prosecute, establish, and secure any and all claims due or owing to the State of Indiana by the general government, except the money paid by the State of Indiana to the United States as direct tax during the War of the Rebellion. It is hereby agreed by said Hord that he will diligently prosecute said claims. If the State of Indiana realizes any money under his prosecution, said Attorney-General hereby agrees that said Hord is to be paid ten per cent of the sum or sums so collected, as allowed by law for an assistant under section ten of 'an act providing for the election, prescribing the powers and duties, and fixing the compensation of the Attorney-General of Indiana,' etc., approved March 5, 1889 (Acts 1889, p. 124). It is hereby further agreed and understood, inasmuch as the term of office of Louis T. Michener, as Attorney-General, may expire before it is possible to complete the collection of said claims, that this appointment shall be continuing so long as said Hord shall continue diligently to prosecute said claims.

Louis T. Michener,<br>Attorney-General of Indiana.<br>William B. Hord."

This contract as shown was made with the full knowledge and consent of the Governor, Auditor and Treasurer of the State of Indiana, and copies thereof were on the day of its execution filed in the office of the Governor and Attorney-General of the State and with the war department and other departments of the United States government. The pleading proceeds to aver that it is the rule of construction "in the legal and executive departments of said State that an employment, made by the Attorney-General, of any attorney for said State in the matter of a suit or proceeding, requiring skill, time, and great labor

on his behalf, and especially where the fees are contingent on success, that said employment was to continue until said cause was finally determined, not simply during the unexpired term of the Attorney-General making the employment of the State. And so is the law." It is then alleged that, immediately after the appointment of appellant herein, the latter set about the work of collecting said war claims, and, among other things, he prepared and made for the State an itemized claim against the United States, which in the aggregate amounted to $714,476.62; that this claim as made out was examined and approved by Alvin P. Hovey, then Governor of the State of Indiana, and by the Auditor and Treasurer of said State, and appellant, as attorney of the State under his said appointment and employment, filed, with the approval of the aforesaid officers, said claim for and in the name of the State of Indiana in the treasury department of the United States. The various steps taken by appellant and the series of services performed by him in the furtherance of the collection of the claim in question are all fully alleged and shown, until finally the paragraph avers that the United States, in the year 1902, audited, allowed, and paid to the State of Indiana, in satisfaction of said claims, the sum of $800,000, and that thereby a commission of ten per cent of said amount so collected by appellant for the State became due and owing to him under his said contract of employment, which amount of commission it is averred is still due and unpaid, and which the State, upon his demand, has wrongfully refused and still refuses to pay to him; that in addition to this amount it is alleged there is due to him the sum of $5,000 expended and paid out by him in the prosecution of the aforesaid claims.

The pleading further avers that from time to time during the prosecution of the claim in question appellant kept the Attorney-General and other officers of the State of Indiana advised in regard to his action in the matter, and

was at all times recognized by successive Attorneys-General and state officers, and that his services and acts in the premises were approved by them; that it was not until after the United States, through its proper officers, had declared that the claim of the State which appellant was prosecuting was just and ought to be paid, and after the congress of the United States had indicated that a law would be passed, authorizing the claim in question to be audited and paid to the State of Indiana, that the then Attorney-General of the State of Indiana, William L. Taylor, wrongfully and unlawfully refused to coöperate with appellant and his associates, Messrs. Michener and Dudley, and wrongfully asserted and claimed that he, said Taylor, possessed the sole right to be the attorney and to represent the State of Indiana in the matter of the collection of said claim; that notwithstanding the aforesaid acts of the State's Attorney-General in refusing to allow appellant and his associates further to act in the prosecution of said claim, he, appellant, knowing that his contract of employment with the State of Indiana was binding on the latter as well as himself, continued to do all and singular that which was in his power to secure the payment of said claims, and that he had in all things fully and faithfully performed said contract on his part, etc. The paragraph closes with the demand for $80,000, and all proper relief.

The second paragraph, as previously stated, relies upon a *quantum meruit.* The plaintiff, after setting out therein facts similar to those alleged in the first paragraph, disclosing the origin of the war claims in question in favor of the State against the federal government, avers that his said services rendered in the collection of these claims were rendered at the instance and request of the defendant, the State of Indiana, made and given to him, first, to wit: April 3, 1889, by the joint and several action of the Governor, Attorney-General, Auditor and Treasurer of State, by whom he was directed to take charge, direction, and

control of the matter of presenting and collecting the claims in question; that from said April 3, 1889, up to and including the year 1902, each and every succeeding Attorney-General of said State and each and every succeeding Governor thereof and said other state officers, ratified and confirmed the agency and attorneyship of plaintiff in acting for the State of Indiana in said matter and aided and assisted him when necessary in his work, and that these officials were kept advised by plaintiff of the efforts which he was making as such agent and attorney in the collection of said claims; that through his efforts, aided by Messrs. Dudley and Michener, who were operating with him in said matter, together with the coöperation of the State's delegation in congress, the State, in the year 1902, received and was paid by the United States government the sum of $800,000; that under the terms of his employment the State agreed that he should be paid for the services which he rendered and for the money which he expended in the prosecution of the claim out of the money collected therein. It is alleged that after appellant had secured the United States government to recognize the claim as just, and after congress had passed an act for the payment thereof, the Attorney-General of the State, William L. Taylor, wrongfully advised and directed the United States treasury department not to pay appellant the money allowed to the State upon its claim, but, on the contrary, procured all of the money to be paid over to the State of Indiana. The value of appellant's services and the amount of money expended by him in the prosecution of the claims in question are shown by the proper averments and exhibits filed in the second paragraph of the complaint, and a recovery in the sum of $100,000 and all proper relief is demanded.

One of the contentions of appellee in this appeal is that the Attorney-General who dealt with and is alleged to have

employed appellant under and by the contract relied upon had no legal warrant or authority for his act in the premises. Appellee's counsel concede that Mr. Michener, as Attorney-General at that time, was empowered to appoint or employ appellant as his assistant to aid him in the collection of moneys due and belonging to the State of Indiana and to compensate him for his services by paying him a commission not exceeding ten per cent of the amount of money collected by him. But it is argued that the employment or appointment of appellant for such purpose could not have been made to extend or continue beyond the official term of Michener as Attorney-General. It is specially insisted that there was an entire absence of any authority or right on the part of Michener to execute on behalf of the State the contract in question and thereby employ appellant generally to represent and serve the State as its attorney in the collection of the claims in controversy. On the other hand, counsel for appellant contend that their client, as shown under the facts, was not an officer of the State, whose official services terminated with the term fixed by law. They contend that he cannot be considered as a deputy officer whose services cease or terminate with the expiration of the term of his superior, but that he must be regarded as an employe of the State under the contract for a special or specific purpose and that his employment continued until the specific or particular purpose for which he was employed was accomplished.

They argue that it was competent for the State's legislature to authorize, and for its Attorney-General to enter into, such a contract on behalf of the State, in view of the character and nature of the claims to be collected, and that the contract herein cannot be considered as invalid because it professes to continue the employment longer than the official life of the Attorney-General by whom the contract was executed. His counsel further contend that under the

facts alleged in the complaint, especially in· the second paragraph thereof, the State, through its Attorneys-General, Governors, Auditors and Treasurers, subsequently ratified and confirmed the employment and attorneyship of appellant and therefore the State, in view of said ratification, must be held liable from the beginning of the employment for the services which he is shown to have performed. This latter proposition is combated by counsel for the State on the ground that the power of these officials to ratify and make the employment of appellant valid and binding upon the State was no greater than their authority to contract with him on behalf of the latter in the first instance. It is argued that if the Attorney-General, the Governor, Auditor and Treasurer had no power to enter into the contract in suit, or make the employment in controversy, said officers would have no authority to bind· the State in any manner by ratification; that what could not be done directly, could not be performed by indirection.

It is evident that, under .the issue raised upon the complaint herein, the onus is upon appellant to show that Attorney-General Michener, the supposed agent of 1. the State, in making the contract, was exercising the power conferred, either expressly or impliedly, upon him by the statute. Such a statute, if any, must be regarded as the letter of his special agency in the matter, and beyond it he could not go and thereby bind the State or create any liability against it. This proposition is well settled by the authorities. *Julian* v. *State* (1890), 122 Ind. 68, and cases cited; *McCaslin* v. *State, ex rel.* (1885), 99 Ind. 428; *Moon* v. *Board, etc.* (1884), 97 Ind. 176; *Wrought Iron Bridge Co.* v. *Board, etc.* (1898), 19 Ind. App. 672; *Woodward* v. *Campbell* (1882), 39 Ark. 580; *Mitchell* v. *Board, etc.* (1878), 24 Minn. 459; *Mayor, etc., v. Reynolds* (1863), 20 Md. 1, 10.

It is an equally well-settled rule that all persons dealing with public officers, whose power or authority to represent

and bind the State, or some subordinate municipal-
2. ity thereof, depends upon or is limited by statute,
are charged at their peril with notice of the scope
of the power of such officers under such statute. *Julian* v.
*State* (1890), 122 Ind. 68, and authorities cited; *Julian*
v. *State* (1895), 140 Ind. 581; *City of Indianapolis* v.
*Wann* (1896), 144 Ind. 175, 31 L. R. A. 743; *Whiteside*
v. *United States* (1876), 93 U. S. 247, 23 L. Ed. 882;
*State, ex rel.,* v. *Hays* (1873), 52 Mo. 578; *McGillivray*
v. *Joint School District* (1901), 112 Wis. 354, 88 N. W.
310, 58 L. R. A. 100, 88 Am. St. 969.

In *Julian* v. *State* (1890), 122 Ind. 68, the question
was involved in relation to the power of the Attorney-Gen-
eral, with the approval of the Governor, Auditor
3. and Treasurer of State, to employ an attorney at
law to prosecute suits for the State in the recovery
of certain lands. Such authority on the part of the Attor-
ney-General, under the law in force at that time, was
denied by the court in that case. In the course of the
opinion by Olds, J., the court said: "It is a well-settled
doctrine that officers of the State exercise but delegated
power, and this is particularly true of the Attorney-Gen-
eral. His office is created by statute, and he, as such
officer, can only exercise such power as is delegated to him
by statute. A contract made with the Attorney-General
is void unless he is expressly or impliedly authorized by
statute to make such contract." If the contract upon which
appellant claims to have been employed was executed by
Attorney-General Michener without authority of law, then
he, his successors, the Governor, Auditor and Treasurer of
State could not ratify and confirm the unauthorized act,
in the absence of any authority or power conferred upon
them or either of them, by the legislature to ratify and
confirm his employment, for it must be conceded that the
power of these officials to ratify the unauthorized contract
of employment of appellant on behalf of the State would

be subject to the same limitations as was the authority or power under the statute to enter into the contract with him in the first instance. In the absence of statutory power on the part of Attorney-General Michener to enter into the contract of employment with appellant, the legislature of the State would be the only competent power to ratify and confirm the unauthorized act of the Attorney-General, or to authorize the ratification thereof by some designated person or persons. *Schneck* v. *City of Jeffersonville* (1899), 152 Ind. 204, and cases cited; *Peck-Williamson, etc., Co.* v. *Steen School Tp.* (1903), 30 Ind. App. 637; *Wrought Iron Bridge Co.* v. *Board, etc., supra; State, ex rel.,* v. *Hays, supra; McGillivray* v. *Joint School District, supra; Delafield* v. *State* (1841), 26 Wend. 192.

Having in view the principles which we have herein asserted, we may, in order to determine the power invested in the Attorney-General by the legislature, turn to

4. an examination of the statutes pertaining to his office, enacted prior to the date of the employment of appellant. The office of Attorney-General was first created under a statute passed in 1855 (Acts 1855, p. 16). By sections four and six of this act the only duties enjoined upon this official were to prosecute and defend all suits against the State, the prosecuting or defending of which had not already been provided for by law, and to furnish, on application, written opinions to state officers or to either branch of the General Assembly. No provisions were made by this act authorizing the Attorney-General to appoint or employ deputies or assistants to aid him in the discharge of his official duties. In 1861, section four of the act of 1855, *supra,* was amended to the extent of requiring the Attorney-General to prosecute and defend all criminal or state prosecutions pending in the Supreme Court (Acts 1861 [s. s.], p. 14, §5659 R. S. 1881). By a supplemental act passed in 1873 (Acts 1873, p. 18, §§5661-5671 R. S. 1881), the powers and duties of this

officer were much enlarged. By section nine of this act it was made the duty of the Attorney-General to ascertain from time to time the amounts paid to any public officer of the State or any county officer or other person for unclaimed witness fees, docket fees, licenses, money unclaimed in estates or guardianships, fines or forfeitures, etc., and where such money was required under the law to be paid to the State, or to any officer in trust for the State, and in all cases where the officers whose duty it was to collect such money had failed, neglected or refused for twelve months after the cause of action in favor of the State had accrued, or who had failed, neglected, or refused to sue for and proceed to recover any property belonging to or which might have escheated to the State, the Attorney-General was authorized to institute, or cause to be instituted and prosecuted, all necessary proceedings to compel the payment of such money or the recovery of such property. For collections made or for property recovered under the provisions of this section he was allowed a commission of twenty per cent on the first $1,000, and ten per cent on sums not exceeding $2,000, and on all sums exceeding $2,000 five per cent.

Section eleven of this supplemental act reads as follows: "The Attorney-General may employ and have such assistants to aid him in the discharge of the duties imposed upon him by the provisions of this act, and pay to them, out of the sums so collected by such person or persons, a sum not exceeding ten·per cent of the sum or sums so collected." Under section twelve of this act the Attorney-General was authorized to have such clerks and deputies as the Governor, Secretary, and Auditor of State might deem to be necessary. The legislature in 1889, by an act approved and in force March 5 (Acts 1889, p. 124, §7683 *et seq.* Burns 1901), virtually re-created the office of Attorney-General and provided that the term of such official should be for two years from and after his election in November

and until his successor was elected and qualified. All that part of section nine·of this latter act which precedes the proviso thereof is but a reënactment of section nine of the supplemental act of 1873, *supra,* except the following provision is added thereto: "The fees of the Attorney-General and his assistants for the collection of any fund which does not bear the expense of its collection, shall be paid out of any money in the treasury not otherwise appropriated." It is the part of section nine of the act of 1889, *supra,* contained within the proviso, together with the provisions of section ten of the same act, upon which counsel predicate the right or authority of Michener as Attorney-General to employ appellant on behalf of the State to perform the services here involved. We here set out in their order the provisions of section nine of the act of 1889 embraced within the proviso therein and also section ten of said act:

"Section nine. * * * *Provided,* that the Attorney-General or his assistants shall not receive any commission or fees for or on account of the collection from the United States of the money paid by the State of Indiana to the United States as direct tax during the War of the Rebellion, but for the collection of any other moneys due the State of Indiana from the United States, he shall be allowed a commission of ten per cent on the amount collected. And, for the purpose of enabling the Attorney-General to ascertain the facts herein contemplated, it is hereby made the duty of the officers having the custody of any such moneys to report to said Attorney-General, upon oath or affirmation, all the facts pertaining thereto upon his demand in person, by deputy or assistants, or in writing; and any such officer failing to render such information upon such demand shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding $100.

Section ten. The Attorney-General may employ and have such assistants to aid him in the discharge of the duties imposed upon him by law, and to pay to

them out of the sum so collected by them a sum not exceeding ten per cent of the sum or sums so collected."

A comparison of section eleven of the act of 1873 with section ten of the act of 1889 discloses that the latter section, with but two unimportant exceptions, is a reënactment of the former section. Sections two, three, nine, and eleven of the supplemental act of 1873 were before this court for construction in the appeal of *State, ex rel.,* v. *Denny* (1879), 67 Ind. 148. This was an action prosecuted by the State, on relation of the Attorney-General, to recover money from James C. Denny, formerly an incumbent of that office. It was claimed in that case that he, as such official, had, during his term of office, received certain moneys belonging to the State which he had refused to account for and pay over. It was said by the court, in the course of its opinion therein, that the object or purpose of the legislature in passing the aforesaid supplemental act of 1873 was more fully to lodge the administration of the State's legal business or affairs where they properly belonged, under the control and management of its Attorney-General, the highest law officer of the State, and to empower him to collect moneys belonging to the State and its trust fund in the hands of state or county officers and other persons, which money had been retained by these persons long beyond the time when it should have been paid into the proper treasury. In construing section eleven of the supplemental act, which provided for the employment of assistants by the Attorney-General, the court in the case of *State, ex rel.,* v. *Denny, supra,* held that thereby the legislature expressly authorized the Attorney-General to employ and have assistants to aid him in the discharge of the duties imposed upon him by the provisions of said act, and to pay them for their services a sum not exceeding ten per cent out of the money collected by them. While section nine of the supplemental act of

1873 did not in express terms profess to authorize the Attorney-General to collect claims due the State from the federal government, nevertheless, this court, in the case of *State, ex rel.,* v. *Denny, supra,* held that it was his duty to collect such claims, and that under the provisions of section nine he was entitled to the commission therein provided for the collection thereof.

Certainly then, under the construction accorded to the provisions of that section by this court, which provisions as we have already said were reënacted by the act of 1889, and aside from the proviso in question now constitute section nine of the latter act, the powers of the Attorney-General in respect to the collection of war claims, etc., due the State from the United States have not been enlarged by section nine of the latter act, as insisted by appellant's counsel. When the provisions of this section are considered, we think it may be said that the legislature seemingly recognized the fact that by the reënactment of the provisions of section nine of the act of 1873 into the same section of the act of 1889, under the construction placed upon it by this court in the case of *State, ex rel.,* v. *Denny, supra,* the Attorney-General would be empowered and it would be his duty to collect any and all money due the State from the United States, for, by the provisions of the proviso, it is expressly declared "that the Attorney-General or his assistants shall not receive any commission or fees for or on account of the collection from the United States of the money paid by the State of Indiana to the United States as a direct tax during the War of the Rebellion," evidently intending by this declaration that the Attorney-General should be deemed and held to be compensated for the collection of such direct tax by the regular salary provided. For the collection, however, of money due the State from the federal government, other than that paid on account of the direct tax, he was to be allowed a commission of ten per cent on the amount collected. Cer-

tainly there is no ground for asserting that the pro-

6.  viso of section nine, together with the provisions of section ten of the act of 1889, should be held to authorize or empower the Attorney-General to enter into the contract in question, whereby he attempted to appoint or employ appellant as his assistant to collect the money in controversy to serve for a period of time which, as expressly recognized and contemplated under the provisions of the contract, would extend beyond the official term of the Attorney-General making the appointment.

Had the legislature, under the provisions of section ten of the act of 1889, intended to invest the Attorney-General with authority to employ an attorney to serve the State generally for an unlimited period of time extending beyond his official term, in the prosecution of any and all claims due or owing to the State of Indiana, as stipulated in the written contract, that body would certainly have conferred such extraordinary power upon him in apt words or language. The contention as advanced by the State is that under the provisions of section ten, *supra,* Attorney-General Michener was not empowered to appoint and constitute appellant an attorney for the State in the matter in question, to serve as such beyond his official term, which, as it appears, terminated November, 1890, at which time his successor was elected and qualified, and unless he was reinvested with authority by appointment or employment of some subsequent incumbent of the office, he could not, therefore, legally continue to serve under the appointment in question after the expiration of the official term of Michener. This contention is tenable and is well supported by the authorities. It will be observed that section ten does not in any manner profess to grant to the Attorney-General the power to employ an attorney to serve independently of that official, but he is only authorized to employ or have assistants to aid him in the discharge of the duties imposed upon him by law. While such assist-

ants cannot be considered as general deputies of the Attorney-General, nevertheless they must at least be regarded, under the provisions of the law, as special deputies to aid or assist him in the collection of all sums of money or claims due or owing to the State of Indiana. The section in question cannot be construed or interpreted to authorize Attorney-General Michener to employ appellant to continue to prosecute for the State the collection of its claims for a time beyond the expiration of his own official term; that he was not invested with such power, appellant was bound to take notice. *Julian* v. *State* (1890), 122 Ind. 68.

He was only authorized to employ and have assistants to aid him in the discharge of the duties imposed upon him by law. The very language of the statute makes it plain that the legislature did not intend that the appointment or employment of assistants by the Attorney-General was to run indefinitely with the office and that such appointees should continue to hold and serve under the successors of the officer making the appointment. Or, in other words, the statute did not contemplate that such employment should continue until the work to be performed' by the assistants was completed, although the completion thereof might extend long beyond the term of the Attorney-General making the appointment. Were we to sanction the contention of appellant's counsel in this respect, then it would follow that an assistant or assistants of the Attorney-General would contiue to serve as such, although the office had been abolished by the legislature. We are not to be understood as denying the right of the legislature to empower the Attorney-General to employ an attorney to perform legal services for the State and to authorize the continuance of such employment until the work for which he was employed is accomplished, regardless of the expiration of the official term of the Attorney-General by whom he is employed. But that is not the question with which we have to deal in this appeal. That Michener, as Attor-

ney-General, was not invested with any such power under the statute as that last-above mentioned in appointing his assistants is manifest. Not having authority to continue the employment of appellant beyond his official term, no legal liability rests on the State to pay for the services rendered. He apparently recognized the fact that he was only empowered by the statute to appoint appellant as his assistant, and not as an attorney to perform services for the State independently of the office of Attorney-General. This is evident by the language used in making the appointment, for it is therein stated that "I, Louis T. Michener, Attorney-General, * * * do hereby nominate, constitute, and appoint William B. Hord, * * * *my assistant* (our italics) to prosecute," etc. Mr. Michener apparently recognized the fact that the collection of the claims, which he appointed appellant as his assistant to collect, could not be completed during his official term; consequently, under a mistaken view of the law no doubt, he attempted to enlarge his authority in this respect by declaring that the appointment of appellant as his assistant should continue as long as the latter diligently prosecuted the collection of the claims. The general and well-affirmed rule is that, in the absence of some statutory provision to the contrary, the commission or appointment of a deputy officer runs or continues only during the term of the officer making the appointment. Of course, in the absence of a statute to the contrary, the principal has the right, at his pleasure, to remove his deputy. If the principal officer is reëlected or reappointed for another term, his deputies must also be reappointed in order to continue them in office. The doctrine that the term of the deputy will expire at the close of the term of his principal is well affirmed by the following authorities: 9 Am. and Eng. Ency. Law (2d ed.), 382, and note; Throop, Pub. Officers, §582; *State, ex rel.,* v. *Barrows* (1898), 71 Minn. 178, 73 N. W. 704; *Banner* v. *McMur-*

*ray* (1827), 12 N. C. 219; *Thomas* v. *Summey* (1854), 46 N. C. 554; *Boardman* v. *Halliday* (1843), 10 Paige 223; *Greenwood* v. *State* (1856), 17 Ark. 332; *United States* v. *Wood* (1819), 2 Cranch C. C. 164, Fed. Cas. No. 16,753; *State, ex rel.,* v. *Board, etc.* (1878), 7 Neb. 42; *Richmond Mayoralty Case* (1870), 19 Gratt. (Va.) 673; *Jackson* v. *Collins* (1824), 3 Cowen 89.

These authorities fully sustain the proposition that appellant's appointment or employment as the assistant of Attorney-General Michener terminated with the expiration of the latter's official term. The fact that subsequent incumbents of the office knew of his appointment, or acquiesced therein, would not alone be sufficient to reinvest him with authority to continue to represent the State as the assistant of the Attorney-General. He must be shown to have been reappointed or reëmployed by the successive Attorneys-General as their assistant to continue the prosecution of the claims in controversy. It is contended by counsel for appellant that certain department officers of the State are shown to have placed a construction upon the provisions of section ten of the act of 1889, which construction is consistent with and in harmony with that for which they contend and should control the court in the interpretation of the law. But there is no ambiguity upon the face of the statute in question in respect to its meaning or purpose. The meaning of the provisions of the section in question is plain or manifest, consequently there is no reason for resorting to departmental construction. The latter is only influential as an interpreter of a doubtful or ambiguous law and will never be permitted to defeat the evident meaning or purpose of a statute. Neither can the power conferred on the Attorney-General by the positive provisions of the statute in controversy be varied or enlarged by usage. Sutherland, Stat. Constr., §308; *Attorney-General* v. *Bank* (1847), 40 N. C. 71; *Gwyn* v. *Hardwicke* (1856), 1 H. & N. 49, 53;

*Pochin* v. *Duncombe* (1857), 1 H. & N. 842, 856; *Westbrook* v. *Miller* (1885), 56 Mich. 148, 22 N. W. 256; *Delafield* v. *State* (1841), 26 Wend. 192.

It is finally insisted that the federal Constitution protects the contract involved in this action, and that, therefore, if the decision of the lower court is sustained,
9. appellant's contract will be impaired or destroyed in violation of the federal Constitution. But before he can claim such constitutional protection it must appear that, under his employment by Attorney-General Michener, a contract on the part of the State of Indiana was created, and that the State, under the construction of the law for which it contends, has secured, under the decision of the lower court, an impairment of such contract.

As we have shown, under the plain provisions of the statute in controversy the Attorney-General was not authorized to make in behalf of the State the contract here involved, and, consequently, the latter is invalid so far as the State is concerned. There is no contract to be protected by the provisions of either the federal or state Constitution. Upon no view of the case, under the law applicable thereto, does either paragraph of the complaint state a cause of action against appellee. Therefore, the lower court did not err in its ruling upon the demurrers.

Judgment affirmed.

All concur, except Gillett, J., not voting.