# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**BARRY A. MACEY**
**ROBERT A. HICKS**
Macey Swanson & Allman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**WAYNE E. UHL**
Stephenson Morow & Semler
Indianapolis, Indiana

**JAMES W. WILSON**
Bingham Farrer & Wilson
Elwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LOCAL 1963 OF THE UNITED AUTOMOBILE, ) <br> AEROSPACE, AND AGRICULTURAL ) <br> IMPLEMENT WORKERS OF AMERICA, UAW, ) <br> ) <br> Appellant-Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MADISON COUNTY, INDIANA, MADISON ) <br> COUNTY ASSESSOR, and MADISON ) <br> COUNTY RECORDER, ) <br> ) <br> Appellees-Defendants. ) | No. 27A05-1301-CC-40 |

**FILED**
Dec 18 2013, 8:41 am

CLERK
of the supreme court,
court of appeals and
tax court

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Warren Haas, Judge
Cause No. 27D03-1111-CC-408

**December 18, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

Appellant-Plaintiff, Local 1963 of the United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (UAW), appeals the trial court's summary judgment in favor of Appellees-Defendants, Madison County, Indiana (County), the Madison County Assessor (Assessor), and the Madison County Recorder (Recorder) (collectively, County Group).

We affirm.

## ISSUES

UAW raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred in concluding, as a matter of law, that the Board of County Commissioners (Commissioners)[1] and County Council (Council)[2] had no authority to encroach upon the rights of the Assessor and Recorder to appoint and discharge deputies.

## FACTS AND PROCEDURAL HISTORY

On January 1, 2009, the County, through the Commissioners and Council, entered into a Collective Bargaining Agreement (CBA) with UAW. The CBA was to remain in effect until December 31, 2011, at which point it would automatically renew for another year and will continue to renew each year until either party elects to terminate by providing

---

[1] The three-member board of commissioners, as the county executive, "is the corporate entity representing the county through which it acts[;]" as such, "in legal contemplation [it *is*] the county." *Waldrip v. Waldrip*, 976 N.E.2d 102, 118 (Ind. Ct. App. 2012). Accordingly, all references to the County necessarily include the Commissioners and vice versa. *See* Ind. Code § 36-2-2-2.

[2] The seven-member county council serves as the county's fiscal body. I.C. § 36-2-3-2.

sixty days' notice. The CBA provides that UAW is "the exclusive bargaining agent with respect to rates of pay, wages, hours of employment and other conditions of employment for <u>all</u> employees who are covered by this Agreement." (Appellant's App. p. 23). Among other provisions, the CBA mandates that covered employees pay dues to UAW as a condition of their continued employment; sets forth a detailed grievance procedure that includes binding arbitration; imposes a progressive disciplinary action regimen favoring corrective rather than punitive measures; and creates a hierarchy of employees whereby hiring, layoffs, and promotions are based on seniority.

In November of 2010, the voters of Madison County elected a new Assessor, Larry Davis, and a new Recorder, Angela Shelton (collectively, Officials).[3] Shortly after the election, in mid-November, the County's human resources director provided the Assessor-Elect and Recorder-Elect with copies of the County Personnel Handbook, the CBA, and various other documents. The human resources director informed the Officials that the employees in their offices were subject to the CBA. On January 1, 2011, the newly-elected Officials assumed office. The Assessor learned that his office had one first deputy and fourteen other deputies and employees, and the Recorder learned that her office had one first deputy and six additional deputies. As the Officials transitioned into their positions, both became aware of severe deficiencies in their offices, including substantial backlogs,

---

[3] On November 12, 2012, between the summary judgment hearing and the trial court's Order, Shelton resigned from her position as Recorder for reasons unrelated to this litigation. Pursuant to Indiana Trial Rule 25(F)(1), her successor, Linda Smith, was automatically substituted as the defendant.

3

non-compliance with State-mandated reports and other deadlines, outdated and unorganized systems, and failed audits by the State Board of Accounts.

Prior to beginning his term, on December 27, 2010, the Assessor-Elect notified five deputies and employees "that they would be relieved of their duties upon [his] taking office." (Appellant's Supp. App. p. 67). On December 30, 2011, UAW delivered a grievance to the Assessor on behalf of two of the discharged individuals, long-time deputy assessors Lelia Kelley (Kelley) and Linda Stephens (Stephens), charging that the Assessor had violated the CBA's provisions for progressive disciplinary action and non-discrimination, and had "wrongfully and illegally discharged" Kelley and Stephens (Appellant's Supp. App. pp. 26-27). UAW demanded the issue be immediately resolved through binding arbitration pursuant to the terms of the CBA. The Assessor requested a certification from UAW of the positions covered by the CBA, which UAW did not provide. On January 18, 2011, the Commissioners requested that the Assessor reinstate Kelley and Stephens. The Assessor refused, explaining that, under Indiana law, he may appoint his own deputies and employees.[4]

Less than two months into the new term, on February 17, 2011, UAW filed two more grievances with the Assessor, asserting that any employees who had not paid their union dues must be terminated and requiring the Assessor to recognize UAW as the exclusive bargaining agent because the "Assessor's office is an entity of Madison County

---

[4] At some point, the Assessor hired both his son and daughter. On June 20, 2012, the Commissioners adopted an anti-nepotism policy applicable "to any department, office or elected official of the County." (Appellant's App. p. 80). The Assessor's children were subsequently terminated.

4

and hereby deemed as the employer in accordance with the CBA." (Appellant's Supp. App. pp. 31-32). In three more grievances filed the same day, UAW claimed that the Assessor had breached the CBA by disciplining Theresa Newman (Newman) without the presence of UAW representation, and had discriminated against her on the basis of her political affiliation. The Assessor explained that he had addressed Newman's failure to timely submit a report but did not discipline her and, believing his office was not subject to the CBA, took no action to comply with the CBA's grievance process.

When the Recorder assumed her office on January 1, 2011, with the exception of a part-time deputy whose salary was not included in the budget, she retained and swore in all of the incumbent deputies. On March 18, 2011, having observed her staff's performance, the Recorder terminated a deputy recorder, Jodi Fesler (Fesler), for continuing to do "substandard work" despite being given several opportunities to improve. (Appellee's Br. p. 10). Thereafter, on March 21, 2011, UAW filed a grievance with the Recorder, claiming that she had violated the progressive disciplinary system and non-discrimination provisions outlined in the CBA and requesting Fesler's reinstatement. On March 30, 2011, the Recorder notified UAW, as well as the Commissioners and Council, that she believed the CBA did not bind her office, and she declined to reinstate Fesler.[5] On November 21, 2011, the Officials each submitted a letter to the Commissioners and the Council that stated it was their understanding that they were not governed by the CBA and

---

[5] In its brief, UAW mentions a grievance filed against the Recorder on behalf of another terminated deputy, Kelly Kean, but provides no further details or arguments regarding this matter.

5

would not authorize the Commissioners and Council to negotiate a new CBA to govern their deputies and employees.

On June 27, 2011, UAW filed its Complaint, alleging the County had breached the CBA. UAW sought an injunction for the reinstatement of the two deputy assessors, Kelley and Stephens, and further sought recognition from the County that UAW is the exclusive bargaining representative for the Officials' deputies. On July 18, 2011, UAW amended its Complaint to include the Officials as defendants.

On April 16, 2012, the Officials moved for summary judgment, contending the Commissioners and Council lacked the "authority to unilaterally bind non-consenting, independently elected officials" to the CBA, which "restricted the elected officials in their appointment, removal and supervision of deputies and employees." (Appellant's Supp. App. pp. 59-60). On October 25, 2012, the trial court held a hearing on the Officials' summary judgment motion, at which the County adopted the Officials' motion. On January 1, 2013, the trial court entered Findings of Fact and Conclusions of Law and entered summary judgment in favor of the County Group.

UAW now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

UAW challenges the trial court's summary judgment because "it is based on an erroneous interpretation and application of the statutory provisions governing the respective authority and duties of the Commissioners and the elected officials." (Appellant's Br. p. 3). Specifically, UAW claims reversal is warranted based on three errors: (1) the trial court's misinterpretation of statutes that expressly state that the

6

Commissioners employ the deputies in the offices of the Officials; (2) the trial court's conclusion that the Officials have statutory authority to independently control the employment decisions in their offices; and (3) the trial court's determination that the Commissioners and Council lack authority to bind the Officials to the CBA.

## I. *Standard of Review*

In reviewing a trial court's entry of summary judgment, our court applies the same standard relied upon by the trial court: pursuant to Indiana Trial Rule 56(C), a motion for summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wright v. City of Gary*, 963 N.E.2d 637, 643 (Ind. Ct. App. 2012), *trans. denied*. Considering only the evidence designated by the parties, we construe all facts and the reasonable inferences derived therefrom in favor of the non-moving party. *Bellows v. Bd. of Comm'rs of Cnty. of Elkhart*, 926 N.E.2d 96, 113 (Ind. Ct. App. 2010). In this case, the parties have agreed that there are no disputes regarding the material facts; thus, the issues are pure questions of law, so our review is *de novo*. *Id.* at 114. As such, UAW bears the burden of persuading this court that the trial court erroneously granted summary judgment. *Shaffer v. State*, 795 N.E.2d 1072, 1075 (Ind. Ct. App. 2003).

## II. *Employed by County or Elected Official*

UAW first asserts that the trial court erred in concluding that the deputies working in the Officials' offices are employees of the Officials. Specifically, the trial court determined "that the Commissioners [do] not have general employment authority over all of the elected officers' deputies and employees." (Appellant's App. p. 18). UAW argues

7

that, taken together, Indiana Code section 36-2-2-13 (Section 13) and Indiana Code section 5-4-1-1 (Section 1) "conclusively establish that the General Assembly considers the deputies and employees who work [for the Officials] to be employed by the Commissioners on behalf of [the] County." (Appellant's Br. p. 23).

A. *Indiana Code § 36-2-2-13*

UAW has presented an apparent issue of first impression regarding the interpretation of Section 13, which states, in part:

(a) The executive may employ a person:
      (1) to perform a duty required of a county officer by statute; or
      (2) on a commission or percentage basis;
only if the employment is expressly authorized by statute or is found by the executive to be necessary to the public interest.

I.C. § 36-2-2-13. When a statute is unambiguous on its face, this court applies its clear and plain meaning. *Ind. Mun. Power Agency v. Town of Edinburgh*, 769 N.E.2d 222, 226-27 (Ind. Ct. App. 2002). Where a statute is reasonably susceptible to multiple interpretations, we endeavor to effectuate the legislative intent and give credence to the statute as a whole. *Id.* We presume the General Assembly knows "of existing statutes in the same area" and will construe statutes relating to the same general subject matter "so as to produce a harmonious result." *Schafer v. Sellersburg Town Council*, 714 N.E.2d 212, 217 (Ind. Ct. App. 1999), *trans. denied*. We further presume that the General Assembly intends statutory "language to be applied in a logical manner consistent with the underlying policy and goals of the statute." *Shepherd*, 733 N.E.2d at 990.

UAW focuses on the phrase "**only *if the employment is expressly authorized by statute*"** and posits that, because statutes expressly authorize the Officials to appoint

8

deputies and employees, the actual "authority to employ these deputies and employees is conferred on the Commissioners by [Section 13]." (Appellant's Br. p. 21).[6] We disagree with UAW's reading of the statute and decline to find that such an interpretation is reasonable. *See Ind. Pub. Emp. Ret. Fund v. Bryson*, 977 N.E.2d 374, 377-78 (Ind. Ct. App. 2012), *aff'd on reh'g, trans. denied*. Finding no ambiguity, without enlarging or restricting its plain and obvious meaning, Section 13 clearly states that, in the absence of public necessity, a statute must explicitly authorize *the Commissioners* to employ a person.

If, as UAW claims, Section 13 afforded the Commissioners *carte blanche* power to fill *any* statutorily created position, other statutes in the same article and chapter—which identify specific jobs that the Commissioners may employ—would be superfluous. *See, e.g.*, I.C. § 36-2-2-14 (county administrator); I.C. § 36-2-2-30 (attorney); I.C. § 36-2-16-10 (county animal disease control emergency coordinator). Also, a myriad of statutes that grant appointment power to other officers would be meaningless if, under Section 13, the Commissioners could usurp their hiring and firing authority. *See* I.C. Ch. 36-2-16 (listing elected officials who may appoint deputies and other employees). Moreover, UAW's interpretation of Section 13 fails to contemplate the overall structure of the County government. The role of the Commissioners is to act as "a general overseer or manager." *Roberts v. State ex rel. Jackson Cnty. Bd. of Comm'rs*, 278 N.E.2d 285, 292 (Ind. Ct. App. 1972). In this capacity, the Commissioners may exercise only the power "expressly conferred . . . by the Constitution and the statutes of the state, or such powers as arise by

---

[6] It is important to note that the deputies of a county official are empowered to perform all of the duties of his or her appointing official, and the deputy's acts are attributed to the officer. I.C. § 36-2-16-3.

necessary implication from those expressly granted, or such as are requisite to the performance of the duties which are imposed on it by law." *Bd. of Comm'rs of Vanderburgh Cnty. v. Sanders*, 30 N.E.2d 713, 716 (Ind. 1940). Accordingly, the Commissioners may employ personnel to manage the County's operation, but if a position statutorily reserved for a County officer's performance is not explicitly designated as employable by the Commissioners, Section 13 curtails the Commissioners' employment authority unless justified by public necessity.

## B. *Indiana Code § 5-4-1-1*

UAW further claims that the language of Section 1 establishes that deputies are employees of the County. Section 1 requires all officers and deputies to take an oath affirming they will "faithfully discharge the duties" of the office. I.C. § 5-4-1-1(a). Section 1 also states:

> (c) This subsection applies to a deputy of a political subdivision. ***An individual appointed as a deputy is considered an employee of the political subdivision performing ministerial functions on behalf of an officer*** and is not required to take the oath prescribed by subsection (a). However, if a chief deputy assumes the duties of an office during a vacancy under IC 3-13-11-12, the chief deputy must take the oath required under subsection (a) before entering on the official duties of the office.

I.C. § 5-4-1-1(c) (Appellant's emphasis). The trial court concluded that Section 1

> does not vitiate the more specific statutes giving employment authority to the independent elected officers. Instead, it was passed as part of legislation declaring that deputies of officers of a political subdivision do not hold a "lucrative office" under Article 2, Section 9 of the Indiana Constitution. . . . [I]t is an insufficient basis on which to conclude that the General Assembly intended that the deputies and employees of elected officers are "employees" of the Commissioners for all purposes.

(Appellant's App. p. 19 (internal citation omitted)). We agree with the trial court.

10

It is well-established that "[a] statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words." *State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008). Here, UAW relies on "just one sentence of a more complex statute" that has been isolated in context. *Warrick Cnty. Comm'rs v. Warrick Cnty. Council*, 706 N.E.2d 579, 580 (Ind. Ct. App. 1999), *trans. denied*. Based on the context of the surrounding provisions, Section 1 simply serves to set forth the oath and bond requirements for various categories of public employees. We find nothing to indicate that Section 1 was intended to identify the County as the ultimate employer of the deputies of all elected officers.

In its reply brief, UAW claims Section 1 is unambiguous, and "the alleged 'focus' of [Section 1] cannot contravene its plain language." (Appellant's Reply Br. p. 12). We find no merit to UAW's plain language rationale because Section 1(a) clearly states that the oath is required of "every officer and every deputy," and Section 1(c) very plainly pertains to those who are employed by the County as opposed to appointed by an officer. It is a longstanding presumption that the General Assembly does not intend statutory language "to be applied illogically or to bring about an unjust or absurd result." *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). Adopting UAW's interpretation would render Section 1(a) and 1(c) redundant, and, as we have established, the County is authorized to hire employees to carry out the management of county government and may also make appointments under limited circumstances. Accordingly, the logical interpretation of Section 1 is that an "employee of the political subdivision" refers to one hired by the County to perform "ministerial jobs that would be performed without

11

contravention of the statutes" and are necessary for the "maintenance of certain county functions." *Roberts*, 278 N.E.2d at 291-92.

We find further absurdity in UAW's contention that an excerpt from Section 1 carries greater significance than the words of numerous other statutes which state the deputies and employees actually belong to the officer. *See, e.g.*, I.C. § 36-2-2-5(a)(2) ("[E]ach county officer . . . shall prepare an itemized estimate of the amount of money required for the officer's . . . office" including "the expense of employing deputies."); I.C. § 36-2-8-4 ("A county officer or a deputy or employee *of a county officer* is entitled to payment for services only after he has rendered those services." (emphasis added)). We thus conclude that Section 13 and Section 1 do not render the County the employer of the Officials' deputies and employees.

### III. *Independent Employment Decisions*

Second, UAW asserts that the trial court erred in concluding that the CBA "improperly impinges" on the Officials' independence. (Appellant's Br. p. 29).

### A. *County's Employment Authority*

UAW first posits that Section 13 and Indiana Code section 36-1-4-14 (Section 14)—which states the County "may hire and discharge employees and establish a system of employment for any class of employees based on merit and qualification"—together "confer the power to employ, hire and discharge deputies and employees of the Assessor and the Recorder to the Commissioners." (Appellant's Br. pp. 30-31). UAW disagrees with the trial court that the County functions as "little more than the landlord and payroll service." (Appellant's Br. p. 29). In response, the County Group claims that the Officials

12

have "the right to appoint their employees. And by implication they then have the right to remove their employees." (Transcript p. 16).

By statute, the Assessor may "appoint the number of full-time or part-time deputies and employees authorized by the county fiscal body." I.C. § 36-2-16-8 (Section 8). Similarly, the Recorder "is entitled to appoint one (1) first or chief deputy, and also may appoint the number of other full-time or part-time deputies and employees authorized by the county fiscal body." I.C. § 36-2-16-4 (Section 4). UAW understands these statutes to confer to the Officials only the power to "name officially" and maintains that Section 4 and Section 8 "do not negate the express authority conferred to the Commissioners through [Sections 1, 13, and 14]." (Appellant's Br. pp. 30-31). If the legislature had intended to grant to the Officials "unfettered independence and authority[,]" UAW insists that Section 4 and Section 8 would explicitly include a right to terminate. (Appellant's Br. p. 31). In contrast, the County Group claims that "the power to appoint would be meaningless without the concomitant power to discipline or remove the employee." (Appellee's Br. p. 18).

Although cited by neither party, we find a prior decision of our court particularly instructive. In *Roberts v. State ex rel. Jackson County Board of Commissioners*, 278 N.E.2d 285, 287-88 (Ind. Ct. App. 1972), following the death of the county's elected surveyor, the board of commissioners requested that the deputy surveyor maintain operations in the office pending the surveyor's official replacement. Reasoning that the deputy's position had automatically terminated upon the surveyor's death, the county auditor refused to compensate the deputy. This court found that "[i]t is elementary that

13

there can be no deputy without there first being a principal; the principal being the duly elected, qualified and acting official of the county." *Id.* at 290.

> The general and well-affirmed rule is that, in the absence of some statutory provision to the contrary, the commission or appointment of a deputy officer runs or continues only during the term of the officer making the appointment. Of course, in the absence of a statute to the contrary, the principal has the right, at his pleasure, to remove his deputy.

*Id.* (quoting *Hord v. State*, 79 N.E. 916, 922 (Ind. 1907)). "If the principal officer is re-elected or reappointed for another term, his deputies must also be reappointed in order to continue them in office." *Hord*, 79 N.E. at 922 (holding Attorney General could not contract *on behalf of* the State to employ an assistant attorney beyond the Attorney General's own term). Our court concluded in *Roberts* that, because the board of commissioners had requested that the deputy keep the surveyor's office open out of necessity to the public interest—and the deputy spent two months doing only "ministerial things" without "pretend[ing] to be the County Surveyor"—the deputy was entitled to compensation *as an employee of the county*. *Roberts*, 278 N.E.2d at 291-93.

In the present case, UAW ardently insists that the Commissioners, rather than the Officials, have the authority to appoint and discharge the deputies. We disagree. In *Roberts*, the deputy was found to be employed *by* the county only after the surveyor's death and only for the period of time that he acted at the board of commissioners' behest to keep the office open in the public interest. The statute in-force in *Roberts* provided:

> [O]fficers may appoint deputies and other assistants as may be necessary for the proper discharge of the duties, and the number of such deputies and assistants shall be subject to the board of commissioners, both as to full and part time employment, and the board of commissioners shall make

14

> recommendations to the county council as to the amount of salary that each
> shall receive.

*Id.* This statute parallels Section 4 and Section 8, which enable the Officials to appoint as many "full-time or part-time deputies and employees" as the Council authorizes. I.C. §§ 36-2-16-4; 36-2-16-8. "To provide for independently elected officers but to deprive them of the ability to choose and supervise their own employees would render elections meaningless and convert the officers to mere department heads or functionaries" of the Commissioners. (Appellee's Br. p. 15). The *Roberts* court confirmed that the right to appoint and discharge generally belongs to the elected officer, but found the board of commissioners had appropriately acted to prevent burdening the public.

Observing both *Roberts* and the rule set forth by our supreme court in *Hord*, we conclude the Officials are independently empowered to appoint and discharge their own deputies at their discretion. Furthermore, we find that the Commissioners have the power to hire an officer's deputy in two instances: (1) a statutory provision "expressly authorize[s]" the Commissioners to make such an appointment; or (2) as in *Roberts*, the Commissioners determine that such employment is "necessary to [serve] the public interest." I.C. § 36-2-2-13(a).

### B. *Anti-Nepotism Statute*

UAW next cites Indiana Code Chapter 36-1-20.2 (Anti-Nepotism Statute) as indicative of the lack of independence of the Officials with respect to their deputies. The Anti-Nepotism Statute prohibits counties from employing two related individuals where one would be directly supervised by the other and authorizes counties to implement a

15

"more stringent" policy. I.C. §§ 36-1-20.2-9 to -10. UAW claims that the Officials conceded to the County's employment authority because, following the Commissioners' enactment of a more extensive anti-nepotism policy than the one promulgated by the General Assembly, the Assessor complied and terminated his children's employment.

The trial court concluded that the Anti-Nepotism statute "provides a very narrow exception that proves the general rule that in the absence of such express statutory authority, the county bodies lack the power to dictate to elected officials who they can hire and fire." (Appellant's App. p. 18). We agree. And while UAW fixates on the phrase that related individuals may not be employed *by the County*, we find the focus of the statute is to prevent conflict of interest-related predicaments—not to partition the County from its Officials regarding the role of "employer." Furthermore, Section 16 of the Anti-Nepotism Statute and the County's policy both state that, annually, "[e]ach elected officer" must submit a written certification to the Commissioners, swearing "that the *officer* has not violated" the anti-nepotism mandate. (Appellant's App. p. 84 (emphasis added)). If, as UAW contends, the County is strictly the employer, this provision would be illogical because the County—not the officer—would be accountable to report hiring violations. Therefore, we conclude the Anti-Nepotism policy does not negate the fact that the power to appoint and discharge belongs to the Officials.

IV. *Authority to Bind Elected Officials to CBA*

Lastly, UAW asserts that the trial court erred by failing to conclude that the Commissioners and Council had the requisite authority to enter into the CBA to regulate the personnel policies affecting the Officials' deputies. The trial court concluded "that the

16

CBA imposes impermissible restrictions on the ability of the . . . elected officers to select, discipline, remove, and direct the work of their deputies and employees." (Appellant's App. p. 17). UAW, however, argues that the CBA does not interfere with the ability of the Officials to manage their offices and should be enforced because the Commissioners and Council have inherent authority, "well-established under Indiana law[,]" to set the employment standards for all County deputies and employees. (Appellant's Br. p. 38). It is undisputed that the Commissioners may execute contracts on behalf of the County, and the Council may appropriate funds to control the number of deputies each officer may appoint. I.C. §§ 36-1-4-7; 36-2-5-3(b).

We have already concluded that the Officials have complete discretion to hire and discharge their deputies and employees, subject to certain limitations imposed by State law. UAW submits that the CBA "simply establishes standards that create parameters within which the [Officials] must operate when making their employment-related decisions" and controls the County's liability because elected officers "cannot be expected to have a sophisticated knowledge of the multitude of applicable employment laws." (Appellant's Br. pp. 37-38). UAW relies on our court's holding in *Nass v. State ex rel. Unity Team, Local* 9212, 718 N.E.2d 757, 763-64 (Ind. Ct. App. 1999), *trans. denied*, that it was "a reasonable exercise of the Governor's responsibility for the efficient operations of the executive branch of government" to issue an executive order allowing executive branch employees to join labor unions. UAW, however, fails to consider the important "technical point" we noted in *Nass*. *Id.* at 763. There, the Governor did not negotiate and sign an agreement that bound all executive branch employees to specific terms and conditions; his

17

executive order simply "provided a framework by which collective bargaining could take place." *Id.* In actuality, the executive branch department heads negotiated the agreements for the employees in their departments. *Id.* In distinction, the Officials in the present case did not negotiate individual CBAs with UAW for their own deputies and employees.

We agree with the trial court that, unlike the policies in the County Personnel Handbook, which are "part and parcel of" general County management, the CBA obstructs the independence of the Officials to staff their offices as they deem best. (Appellant's App. p. 18). The CBA imposes a strict seniority system for hiring preferences, specifies the manner and duration of advertising vacant positions, and "encourages internal promotion and transfer of current employees." (Appellant's Supp. App. p. 85). The CBA also compels protracted disciplinary and grievance procedures that preclude an officer's ability to remove and replace a problematic employee in a timely and efficient manner. We conclude that the Commissioners and Council, by entering into the CBA, exceeded their authority and encumbered the Officials' right to appoint and discharge their deputies and employees.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly issued summary judgment for the County Group because, as a matter of law, the Commissioners and Council had no authority to execute a CBA interfering with the independence of the Officials in appointing and discharging their deputies and employees.

Affirmed.

ROBB, C. J. and KIRSCH, J. concur