

FILED

Jun 14 2023, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Brian R. DeHem
DeHem Law, LLC
Noblesville, Indiana

ATTORNEYS FOR INDIANA SHERIFF'S
ASSOCIATION, AMICUS CURIAE

Tonya J. Bond
Josh S. Tatum
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Clinton County Sheriff's Office and Sheriff Richard Kelly, <br><br> *Appellants*, <br><br> v. <br><br> The Board of Commissioners of Clinton County and the County Council of Clinton County, <br><br> *Appellees*. | June 14, 2023 <br><br> Court of Appeals Case No. 22A-PL-2640 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Sean M. Persin, Judge <br><br> Trial Court Cause No. 79C01-2104-PL-35 |

**Opinion by Judge Brown**
Judges Bailey and Weissmann concur.

**Brown, Judge.**

[1] The Clinton County Sheriff's Office and Sheriff Richard Kelly (together, "Appellants") appeal from the trial court's declaratory judgement. We affirm.

*Facts and Procedural History*

[2] On January 1, 2019, Richard Kelly began his term as the Sheriff of Clinton County. Sheriff Kelly appointed his spouse, Ashley Kelly, as the jail matron and as the manager of the jail commissary for the Sheriff's Office.[1] Sheriff Kelly also appointed a legal deputy to serve the Sheriff's Office.

[3] The Indiana State Board of Accounts ("SBOA") and the Indiana State Police ("ISP") investigated the use of the commissary fund. In March 2021, the Board of Commissioners of Clinton County (the "Board") filed a complaint for emergency preliminary injunctive relief requesting an order prohibiting Sheriff Kelly from expending further money from the commissary fund. In April 2021, an amended complaint was filed adding, as plaintiff, the County Council of Clinton County (the "Council," and the Board and Council, together, "Appellees"). The court issued an order on June 14, 2021, denying Appellees' request for a preliminary injunction. The order noted "there is an ongoing investigation by the [ISP] into the alleged unauthorized control over commissary funds at the Clinton County Sheriff's Office," "there is a pending

---

[1] Ind. Code § 36-8-10-5 provides "[e]ach sheriff shall appoint a prison matron for the county" and "[t]he prison matron or the prison matron's assistants shall receive, search, and care for all female prisoners and all boys under fourteen (14) years of age who are committed to or detained in the county jail, municipal lockup, or other detention center in the county."

investigation with the [ISBA]," and Appellants "appear to be cooperating with the pending investigations." Appellants' Appendix Volume II at 130-131.

[4] On June 25, 2021, Appellants filed a counterclaim for declaratory judgment requesting that the trial court make the following determinations: (A) Ind. Code §§ 36-2-2-2, 36-1-3-5(a)(2), and 36-8-10-21[2] allow elected officers, including Sheriff Kelly, to execute their own contracts subject to their budgets; (B) Ind. Code § 36-8-10-10.6 provides that Sheriff Kelly is entitled to appoint a legal deputy, neither the Board nor the Council approve the contract for the legal deputy, and the Council must appropriate a reasonable amount to pay the legal deputy; (C) Ind. Code § 36-8-10-21 provides for the commissary fund and neither the Board nor the Council approve contracts for personnel regarding the commissary, including contracts for commissary manager; (D) Sheriff Kelly did not unlawfully pay legal fees from the commissary fund when there was a resolution in place for him to pay expenses for contracting with professional consultants; and (E) Sheriff Kelly was entitled to pay for legal fees from the commissary for the defense of this and other actions challenging the operation of the fund. The counterclaim alleged no contract needed approval by Appellees given that no public funds were used to pay the commissary

---

[2] Ind. Code § 36-2-2-2 provides: "The three (3) member board of commissioners of a county elected under this chapter is the county executive. In the name of 'The Board of Commissioners of the County of ____' the executive shall transact the business of the county." Ind. Code § 36-1-3-5(a) provides: "Except as provided in subsection (b), a unit may exercise any power it has to the extent that the power: (1) is not expressly denied by the Indiana Constitution or by statute; and (2) is not expressly granted to another entity." Ind. Code § 36-8-10-21 relates to a jail commissary.

manager. In October 2021, Appellees filed a motion to dismiss their complaint, and the court granted the motion.

[5] Appellants and Appellees filed motions for summary judgment. In their motion, Appellants stated they filed the declaratory judgment action to prevent the interference of the Board and Council in the operations of the Sheriff's Office. In her affidavit, Ashley stated that she served as the jail matron as an employee of the Sheriff's Office, she also provided services as the commissary manager which was a contractor position, and her compensation as commissary manager was based on sales. She stated "Sheriff Kelly provided a contract for my services as Commissary Manager to the County Attorney," the Board never took any action on that contract, "[t]he financial terms of that agreement mirrored that of the previous Commissary Managers," and, after the SBOA "found the lack of a written contract for the Commissary Manager improper, Sheriff Kelly and I executed a retroactive contract for commissary services."[3] *Id.* at 191. She further stated the Council refused to appropriate

---

[3] A "Commissary Services Contract" dated November 12, 2021, following Ashley's affidavit provided:

> THIS CONTRACT made and entered into between the Clinton County Sheriff's Office . . . and Leonne, LLC and/or Ashley Kelly . . . (Leonne, LLC and Ashley Kelly shall be collectively referred to as "Contractor").
>
> * * * * *
>
> Leonne LLC is a company created on November 27, 2018 and originally owned by Sheriff Kelly and Ashley Kelly. Sheriff Kelly has since relinquished any ownership in Leonne LLC.
>
> * * * * *
>
> 2. Compensation. Contractor and the Sheriff shall jointly approve prices for commissary items, an up-to-date list of which shall be kept at all times in the Sheriff's Office. Contractor shall be paid one-half (1/2) of the profit margin of each commissary item sold as calculated by

funds to pay the legal deputy in 2021, when Sheriff Kelly sought to have funding added to his budget to pay his legal deputy in 2022, the Council refused to do so, and as a result his 2022 budget contains no funds for the legal deputy's compensation. Ashley also stated that, during a public meeting in December 2021, members of the Board stated they were going to fire her as matron because of an alleged violation of a nepotism ordinance. Appellants designated Council Resolution 2017-05 dated May 9, 2017, which allowed commissary funds to be used for expenses for contracting with professional consultants and Council Resolution 2021-01 dated April 13, 2021, rescinding Council Resolution 2017-05.

[6] The designated evidence also includes a report issued by the SBOA regarding the use of the commissary funds for the period between January 1, 2019, and September 30, 2021. The SBOA's report states:

> Checks were issued from the CCSO [Clinton County Sheriff's Office] jail commissary funds totaling $190,916.61 to Leonne[4] and $32,967.92 to Ashley Kelly from January 1, 2019 to September 30, 2021, for 50 percent of commissary profit on merchandise sales, with the remaining 50 percent of the profit being retained in the jail

---

the Sheriff after deducting supplier's invoices. The other one-half (1/2) of the profit margin shall be deposited by the Sheriff in the Clinton County Jail commissary fund.

Appellants' Appendix Volume II at 194-195.

[4] The report states "Leonne is an Indiana based limited liability corporation established on November 27, 2018, which was approximately two months prior to Sheriff Richard Kelly taking office" and "Leonne is owned and operated by its two members, Richard Kelly and Ashley Kelly." Appellants' Appendix Volume II at 205. It also states: "Richard Kelly and Ashley Kelly have a 49 percent and 51 percent ownership interest, respectively, in Leonne." *Id.* at 206.

commissary fund for use by the Sheriff in accordance with Indiana Code 36-8-10-21(d). . . .

Supporting documentation for the above checks were "invoices" printed by the CCSO Records Clerk that detailed commissary profit on merchandise sold, and contained handwritten notes made by the Records Clerk that calculated 50 percent of that profit amount. This calculated amount was paid to either Leonne or Ashley Kelly.

*Id*. at 205. The report further provided that, in order to substantiate the payments, the SBOA requested Ashley to provide a contract for commissary services; Ashley provided a copy of a contract between Nancy Ward and Sheriff Jeffrey Ward, dated November 6, 2017, to which Ashley was not a party; on March 2, 2021, an unsigned contract was presented to the Clinton County attorney which referenced the Sheriff's Office and Ashley as the parties; and as of September 30, 2021, the proposed contract had not been signed. The report stated Ashley served as the jail matron, she and Sheriff Kelly were paid from the county general fund, "the associated compensation for the Sheriff and Matron positions were included in the County's salary ordinances, which were approved by the County Council," and "none of the compensation paid to Ashley Kelly via Leonne, or to Ashley Kelly from the commissary fund, was included in the County's salary ordinance or in any labor contract authorized by the County Council." *Id*. The report stated "it is our audit position that any payments for commissary manager services provided by Leonne or Ashley Kelly should have been supported by signed written contracts." *Id*. at 206.

[7]     In their summary judgment motion, Appellees argued that the Board as the county executive is the only entity in county government allowed to enter into contracts and that there are financial limits to the sheriff's ability to contract and pay for a legal deputy. In their amended brief in support of their motion, Appellees argued "all payments to Leonne LLC for commissary services should have been memorialized and supported by signed written contracts." Appellants' Appendix Volume III at 55. Appellees further stated that "[Appellants] assert that the Council must appropriate a 'reasonable amount' to pay for the Sheriff's legal deputy," "[Appellees] do not disagree with this assertion," and "[t]he issue being, what amount is reasonable?" *Id*. at 58. They stated that, "[f]rom the dates of December 19, 2018 through December 7, 2021, [Appellants] have paid a total of $65,769.19 in legal fees for a legal deputy per the attached invoices . . . ." *Id*. at 58-59.

[8]     On March 31, 2022, the trial court held a hearing. On July 7, 2022, the court entered an order finding "[t]he Sheriff and Commissary Manager created Leonne LLC to receive profits from the sale of commissary items," "[t]he Commissary Manager was a 51% member, and the Sheriff was a 49% member, in Leonne LLC," "[t]he agreements to hire and pay the Commissary Manager and/or deposit profits into Leonne LLC were not submitted to the County for approval," and "[c]onversely, the former Commissary Manager, Nancy Ward, wife of former Sheriff Jeff Ward, signed annual contracts with the County,

along with conflict of interest disclosures."[5] Appellants' Appendix Volume II at 20. It also found "[m]any legal disputes have arisen between the Sheriff and the County during Sheriff Kelly's tenure" and, "[w]hen the Sheriff sought increased funding from the County for legal deputy services in 2022, the Council denied the request." *Id.* at 21. The order also stated:

> 1. The Court declines to enter declaratory relief regarding the Sheriff's authority to appoint a Legal Deputy of his choosing or whether the Council must appropriate a reasonable amount to pay the Legal Deputy. The County has oversight over contracts with the Sheriffs' Legal Deputy that might encumber the county general fund.
>
> * * * * *
>
> 2. It was not unlawful for the Sheriff to appoint his wife as the Jail Matron because Indiana law specifically allows the wife of the Sheriff to serve as a Jail Matron, as an exception to the nepotism statutes.
>
> * * * * *
>
> 3. The Court declines to enter declaratory relief on the broad question of whether elected officers can execute their own contracts subject to their budgets.

---

[5] The order also stated:

> [C]hecks issued to Leonne LLC and the Commissary Manager totaled $113,610.07 in 2020. This was a significant increase from prior years, primarily due to the Commissary Manager's decision to sell electronic smoking devices to jail inmates. The County later enacted an ordinance banning the use of electronic smoking devices in all county buildings, including the jail. On October 8, 2021, the Montgomery Superior Court #1 concluded that the County exceeded its authority by enacting the ordinance because the County cannot restrict the Sheriff's authority to sell electronic smoking devices and nicotine pouches to jail inmates. See 54D01-2103-PL-257. The County has appealed this decision to the Indiana Court of Appeals.

Appellants' Appendix Volume II at 20. This Court affirmed the trial court's decision. *See Brewer v. Clinton Cnty. Sheriff's Off.*, No. 22A-CP-117, (Ind. Ct. App. Mar. 9, 2023), *trans. pending*.

4. Indiana Code § 36-8-10-21 provides for the Sheriff's commissary fund, and the County must approve contracts regarding the distribution of profits from the commissary fund.

* * * * *

5. During the period of time when Council Resolution 2017-05 was in place, it was not unlawful for the Sheriff to pay legal fees from the commissary fund for legal work of the Sheriff's Office, without approval of the County.

* * * * *

6. During the period of time when Council Resolution 2017-05 was NOT in place, the Sheriff was still entitled to pay for legal fees from the Sheriff's commissary fund for all matters related to expenses of operating the commissary, without approval of the County.[6]

*Id*. at 21-22, 24, 27.

[9]     Appellants filed a motion to correct error, and the court held a hearing at which it stated "what you were seeking in declaratory relief is that the sheriff has the authority to enter any contracts, as long as it's within the confines of the budget we can contract for anything," "I'm not prepared to say that," "[s]o, what you [were] specifically requesting is too broad and so I just said you know what I'm not going to say that," "I do not disagree with you that the sheriff certainly can

---

[6] The court found that reasonable attorney fees related to operating the commissary included fees related to addressing "whether County has authority to ban e-cigarettes and nicotine pouches (regardless of the outcome of the appeal)" and "good faith legal disputes involving I.C. § 36-8-10-21 (even if the Court does not adopt the Sheriff's position)." Appellants' Appendix Volume II at 27.

enter some contracts," and "I don't think anyone would dispute that."

Transcript Volume II at 40. The court entered an order stating that it "made some references to 'the County,' instead of 'the Board of Commissioners of Clinton County' or 'the County Council of Clinton County,' when it was unnecessary to define the role of each department" and clarifying that its reference to "the County" in its "Decision No. 4" was a reference to "the county fiscal body" or the Council. Appellants' Appendix Volume II at 37. The order also stated the court made no determination regarding any criminal activity.[7]

## *Discussion*

[10] Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Resources*, 756 N.E.2d 970, 973 (Ind. 2001). We may affirm on any grounds supported by the Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002). A trial court's grant of summary judgment is clothed with a presumption of validity. *Lowrey v. SCI Funeral Servs., Inc.*, 163 N.E.3d 857, 860 (Ind. Ct. App. 2021), *trans. denied*. The fact the parties make cross-motions for summary judgment does not alter our standard of review. *Sterling Commercial Credit-Mich., LLC v. Hammert's Iron Works, Inc.*, 998 N.E.2d 752, 756 (Ind. Ct. App. 2013). We review the court's

---

[7] Criminal charges were filed in March 2022 against Richard Kelly under cause number 12C01-2203-F6-253 and Ashley Kelly under cause number 12C01-2203-F6-254.

ruling on a motion to correct error for an abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*.

[11] Indiana's declaratory judgment statute provides that "[c]ourts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed," "[t]he declaration may be either affirmative or negative in form and effect," and "[t]he declaration has the force and effect of a final judgment or decree." Ind. Code § 34-14-1-1. "The court may refuse to render or enter a declaratory judgment or decree where the judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Ind. Code § 34-14-1-6. "The use of a declaratory judgment is discretionary with the court; therefore, a trial court's decision to allow a declaratory judgment to proceed is reviewed for an abuse of discretion." *Mid-Century Ins. Co. v. Est. of Morris ex rel. Morris*, 966 N.E.2d 681, 687 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

[12] Appellants argue that Ind. Code § 36-8-10-10.6(e) "expressly and unequivocally authorizes Sheriff Kelly to appoint a legal deputy without the oversight or approval of the county executive or county fiscal body" and the Board "has no authority to determine the terms of that appointment." Appellant's Brief at 15. They argue Ind. Code § 36-8-10-21 establishes a commissary fund from which the sheriff may disburse funds without appropriation or approval by the county fiscal body. They argue the payments to Ashley and Leonne were compensation for services rendered, the payments were properly classified as

expenses, "both during and prior to Sheriff Kelly's term of office, the Commissary Manager's compensation was based upon a 50/50 split of the Jail Commissary profit margin—similar to a commission-based wage," "[t]he method of calculating an expense does not change an expense payment's classification into a distribution of profits," and even if the payments "could be classified as a disbursement of profits," the legislature "did not categorize any such payments differently from any other disbursement of funds permitted by the statute." *Id.* at 24-26. Appellants request this Court to remand with instructions to enter declarations that: Ind. Code § 36-8-10-10.6(e) grants the Clinton County Sheriff sole authority to appoint a legal deputy and to determine all terms and conditions of the legal deputy's employment; the Clinton County Sheriff is authorized to execute contracts on behalf of the Clinton County Sheriff's Office; the Clinton County Sheriff is authorized to negotiate and execute a contract to retain a commissary manager as a personnel expense related to operation of the commissary; and the funds disbursed to Ashley via Leonne for her services as commissary manager were "expenses of operating the commissary, including, but not limited to, facilities and personnel" as provided in Ind. Code § 36-8-10-21(d)(2). *Id.* at 27.

[13] The Indiana Sheriffs' Association, as amicus curiae,[8] argues the trial court erred in finding the Board has oversight over contracts with the legal deputy that might encumber the county general fund and in finding the Sheriff is not

---

[8] Counsel Tonya Bond for the Indiana Sheriff's Association was the legal deputy appointed by Sheriff Kelly.

authorized to disburse profits from the commissary without county oversight. It argues "[t]he trial court's rule would allow commissioners to control sheriffs' contractual decision-making" and "[a]llowing commissioners to interfere with sheriffs' fulfilling their duties in this way—to hijack the decision-making process—effectively hands the keys to the jail over to the commissioners." Indiana Sheriffs' Association's Brief of Amicus Curiae at 15. It argues sheriffs, not councils or commissioners, have authority to enter contracts with legal deputies. It asserts: "If the trial court is correct, commissioners would oversee selecting their sheriffs' legal counsel. As this case illustrates, commissioners and sheriffs sometimes find themselves on the opposite sides of litigation, making that role inappropriate and unethical." *Id*. at 20-21. It also argues sheriffs, not councils or commissioners, have authority to enter contracts with commissary vendors. It contends the court "relied heavily on its own distinction between 'expenses' and 'profits'" and "nothing indicates that the expense of managing the commissary cannot be calculated as a commission of the revenues after subtracting all other expenses." *Id*. at 22-24.

[14] Appellees maintain "[t]he Sheriff and the Amicus treat this case as addressing the abstract question of whether Indiana sheriffs may unilaterally enter contracts that bind Indiana counties," "this is not an issue for this appeal," and "[t]he trial court expressly *declined* to enter a declaratory judgment deciding whether or not the Sheriff needed approval to enter contracts." Appellees' Brief at 19-20. They argue the Sheriff has the power to appoint its counsel but not to approve the contract for payment of that counsel through county funds. They

assert the plain language of Ind. Code § 36-8-10-21 places limits on how a sheriff may use commissary funds, lists several ways a sheriff may use commissary funds, and provides the funds may be used for another purpose that is mutually agreed upon by the sheriff and the county fiscal body. They contend "[t]he Sheriff cannot fit the payments to Leonne into the category for 'expenses'" and therefore needed the Council's approval for those payments. *Id*. at 32. They argue Sheriff Kelly "claims these payments are akin to a contingency fee or an arms-length business contract that have a profit baked into them," "[t]here is no arms-length contract that might support the Sheriff's argument but only a deal between the Sheriff and a business . . . he owns with his wife," "[i]n this context, the 'contract' does not accurately reflect actual 'expenses' of running the commissary but pays out 'profits' above the amounts amount [sic] of expenses," and "[t]he statute's 'expenses' limitation would have no meaning if it could be avoided by creating a new entity and treating payments to that entity as 'expenses.'" *Id*. at 38-39.

[15]     When interpreting a statute, we begin by reading its words in their plain and ordinary meaning, taking into account the structure of the statute as a whole. *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023) (citation omitted). Mindful of what the statute says and what it does not say, we aim to avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results. *Id.* (citation omitted). Rather, we presume the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

(quotation and citation omitted). Ultimately, our goal is to determine and give effect to the legislature's intent. *Id.*

[16]     With respect to the trial court's findings regarding the distributions from the commissary fund, Ind. Code § 36-8-10-21 provides:

> (a) This section applies to any county that has a jail commissary that sells merchandise to inmates.
>
> (b) A jail commissary fund is established, referred to in this section as "the fund". The fund is separate from the general fund, and money in the fund does not revert to the general fund.
>
> (c) The sheriff, or the sheriff's designee, shall deposit all money from commissary sales into the fund, which the sheriff or the sheriff's designee shall keep in a depository designated under IC 5-13-8.
>
> (d) The sheriff, or the sheriff's designee, at the sheriff's or the sheriff's designee's discretion and without appropriation by the county fiscal body, may disburse money from the fund for:
>
> > (1) merchandise for resale to inmates through the commissary;
> >
> > (2) expenses of operating the commissary, including, but not limited to, facilities and personnel;
> >
> > (3) special training in law enforcement for employees of the sheriff's department;
> >
> > (4) equipment installed in the county jail;
> >
> > (5) equipment, including vehicles and computers, computer software, communication devices, office machinery and furnishings, cameras and photographic equipment, animals, animal training, holding and feeding equipment and supplies, or attire used by an employee of the sheriff's department in the course of the employee's official duties;

(6) an activity provided to maintain order and discipline among the inmates of the county jail;

(7) an activity or program of the sheriff's department intended to reduce or prevent occurrences of criminal activity, including the following:

    (A) Substance abuse.
    (B) Child abuse.
    (C) Domestic violence.
    (D) Drinking and driving.
    (E) Juvenile delinquency;

(8) expenses related to the establishment, operation, or maintenance of the sex and violent offender registry web site under IC 36-2-13-5.5; or

(9) any other purpose that benefits the sheriff's department that is mutually agreed upon by the county fiscal body and the county sheriff.

Money disbursed from the fund under this subsection must be supplemental or in addition to, rather than a replacement for, regular appropriations made to carry out the purposes listed in subdivisions (1) through (8).

(e) The sheriff shall maintain a record of the fund's receipts and disbursements. The state board of accounts shall prescribe the form for this record. The sheriff shall semiannually provide a copy of this record of receipts and disbursements to the county fiscal body. The semiannual reports are due on July 1 and December 31 of each year.

[17] According to the statute, Sheriff Kelly was able to disburse money from the commissary fund for certain specified purposes which included "expenses of operating the commissary, including . . . personnel." Ind. Code § 36-8-10-21(d)(2). He was also able to disburse money from the fund for "any other

purpose that benefits the sheriff's department," but a disbursement for such "other purpose" was required to be "mutually agreed upon by the county fiscal body and the county sheriff." Ind. Code § 36-8-10-21(d)(9).

[18]     The trial court found:

> There is at least some authority to support the Sheriff's position that he can enter into some contracts regarding the disbursement of commissary funds without approval of the County. See *Alexander v. Marion County Sheriff*, 891 N.E.2d 87, 88 (Ind. Ct. App. 2008) ("The parties do not dispute that . . . the Sheriff has the authority, and in fact, the duty, to enter into contracts" regarding telephone services for jail inmates.)[, *reh'g denied*, *trans. denied*.] It is undisputed that he has the authority to pay wages for services related to operating the commissary.
>
> However, it is a giant leap to contend that he may lawfully distribute over $100,000.00 per year to himself and his wife through a private entity, without County approval, because all of these funds are personnel "expenses" necessary to operate the commissary. I.C. § 36-8-10-21(d)(2). . . .
>
> The powers of the Sheriff are established by statute. The Court declares that personnel expenses necessary to operate the commissary include wages or specific financial outlays necessary to procure certain services. Profits, by their very nature, are amounts exceeding expenses, and I.C. § 36-8-10-21(d)(2) does not provide authority to disburse profits without County oversight. Therefore, I.C. 36 § 26-8-10-21(d)(9) [sic] controls. The Sheriff may disburse profits of the commissary fund, but only as mutually agreed with the County, which is consistent with the practice of the prior Sheriff.
>
> Furthermore, it is important to note that the Sheriff is a 49% member of Leonne LLC, but he has delegated the work associated with the commissary fund to the Commissary Manager. The argument that

commissary funds are paid to him as an "expense of operating the commissary" is not persuasive.

Appellants' Appendix Volume II at 26-27.

[19] The designated SBOA's report provided that checks were issued from the commissary "totaling $190,916.61 to Leonne and $32,967.92 to Ashley Kelly from January 1, 2019 to September 30, 2021, for 50 percent of commissary profit on merchandise sales," that supporting documentation "detailed commissary profit on merchandise sold, and contained handwritten notes made by the Records Clerk that calculated 50 percent of that profit amount," and "[t]his calculated amount was paid to either Leonne or Ashley Kelly." *Id.* at 205. The November 12, 2021 "Commissary Services Contract," which referred to "Leonne, LLC and Ashley Kelly," collectively, as "Contractor," provided: "Compensation. . . . Contractor shall be paid one-half (1/2) of the profit margin of each commissary item sold as calculated by the Sheriff after deducting supplier's invoices. The other one-half (1/2) of the profit margin shall be deposited by the Sheriff in the Clinton County Jail commissary fund." *Id.* at 194-195. Moreover, the SBOA report provided that Richard Kelly had a forty-nine percent ownership interest in Leonne and Ashley Kelly had a fifty-one percent ownership interest, which supports the conclusion the disbursements were not for services rendered or operating expenses. Under the circumstances, we are not persuaded that the disbursements to Leonne and Ashley constituted "expenses of operating the commissary" under Ind. Code § 36-8-10-21(d)(2). We find no error in this regard.

[20] To the extent Appellants requested the trial court to make the determination that elected officers including Sheriff Kelly are allowed to execute their own contracts subject to their budgets, the trial court stated that requests for declaratory relief "must be limited to specific cases and controversies to avoid unintended consequences and judicial overreach" and "decline[d] the invitation to answer this broad question of law." *Id.* at 24. Appellees maintain "[t]he trial court opted . . . to construe and apply the statutes governing the particular matters at issue—the jail commissary and the appointment of a legal deputy" and the court's decision complied with the principles that the courts will not address constitutional issues unless absolutely necessary and decide cases only on the facts of the particular case. Appellees' Brief at 20-21 (citing *Snyder v. King*, 958 N.E.2d 764, 786 (Ind. 2011) ("First, it is a cardinal principle of the judicial function that we will pass upon the constitutionality of a coordinate branch's action only when it is absolutely necessary to do so. . . . A second cardinal principle of the judicial function is that courts should not issue advisory opinions but instead should decide cases only on the specific facts of the particular case and not on hypothetical situations.") (citations omitted)). We agree the trial court was not required to enter the broad declaratory judgment requested by Appellants. We find no error in this respect.

[21] As for the appointment of a legal deputy, Ind. Code § 36-8-10-10.6(e) provides:

> The sheriff may also appoint one (1) legal deputy, who must be a member of the Indiana bar. The legal deputy does not have police powers. The legal deputy may continue to practice law. However,

neither the legal deputy nor any attorney in partnership with the legal deputy may represent a defendant in a criminal case.

Additionally, Ind. Code § 36-2-3.5-3 provides: "The board of commissioners elected under IC 36-2-2 is the county executive. The county council elected under IC 36-2-3 is the county legislative body as well as the county fiscal body." Ind. Code § 36-2-3.5-4(a) provides "[a]ll powers and duties of the county that are executive or administrative in nature shall be exercised or performed by its executive, except to the extent that these powers and duties are expressly assigned to other elected officers," and Ind. Code § 36-2-3.5-4(b) provides the executive shall, among other things, submit an annual budget to the legislative body; supervise the collection of revenues and control all disbursements and expenditures, and prepare a complete account of all expenditures, to the extent these matters are not expressly assigned to other elected officers; and negotiate contracts for the county.

[22] As for the legal deputy the trial court found:

> The County does not dispute that Ind. Code § 36-8-10-10.6 expressly authorizes the Sheriff to "appoint" a Legal Deputy of his choosing. The County does not dispute that the Council must appropriate a reasonable amount to pay the Legal Deputy. Since there are no controversies on these issues, the Court does not grant declaratory relief.
>
> * * * * *
>
> The Court finds that agreeing upon a reasonable rate for attorney's fees is an inherent part of the process of appointing a Legal Deputy. If this issue was left to the County, particularly during a

time of frequent intra-governmental disputes, it could significantly limit the Sheriff's ability to freely appoint a Legal Deputy of his choosing.

Having said that, the Legislature did not confer unrestrained authority for the Sheriff to otherwise "contract with" a Legal Deputy on all terms the Sheriff "considers appropriate." This is language our Legislature has used in other areas of local government. For example, a Town Clerk-Treasurer has contracting authority for legal services under Ind. Code § 36-5-6-8, as follows:

> A clerk-treasurer may hire or contract with competent attorneys or legal research assistants on terms the clerk-treasurer considers appropriate.

Generally, when the Legislature uses particular language in one section, but omits it in another, we presume it is intentional. *J.B. v. Ind. Dep't of Child Servs.*, 61 N.E.3d 308, 312 (Ind. Ct. App. 2016). We presume the Legislature authorized the Sheriff to select his Legal Deputy, but did not authorize the Sheriff to sign contracts with the Legal Deputy regarding retainers, promises to pay for services beyond any appropriated amount, or other terms that might encumber the county general fund.

Meanwhile, the Commissioners have the power to "transact the business of the county." I.C. 36-2-2-2. This includes executing contracts on behalf of the County. *Local 1963 of the UAW v. Madison County*, 999 N.E.2d 949, 958 (Ind. Ct. App. 2013)[, *trans. denied*]. Accordingly, the Court declares that the County, not the Sheriff, has oversight over contracts with the Legal Deputy that might encumber the county general fund.

Appellants' Appendix Volume II at 21-22.

[23]     We agree that Ind. Code § 36-8-10-10.6 provides that the sheriff may appoint a legal deputy and that the Council and Board do not have the authority to reject

the sheriff's selected legal deputy.  Also, we find the court's determination that agreeing upon a reasonable rate for the legal deputy's fees is an inherent part of the appointment is reasonable and consistent with effectuating the intent of Ind. Code § 36-8-10-10.6.  The court's limited determination seeks to avoid rendering superfluous the language in the foregoing statutes.[9]  We do not disturb the trial court's limited determinations under these circumstances.[10]

[24] For the foregoing reasons, we affirm the trial court.[11]

[25] Affirmed.

---

[9] To the extent the trial court stated the Sheriff does not have unlimited authority to enter an agreement with the legal deputy where the contract might encumber the county general fund, we clarify that the Sheriff may enter an agreement with a legal deputy, and if the Council does not provide some allocation for the agreement, or the Sheriff does not believe the allocation is reasonable, the Sheriff may initiate a mandate action.  *See Brown v. State ex rel. Brune*, 172 Ind. App. 31, 36, 359 N.E.2d 608, 611 (1977) ("The legislative intent appears to command the council to make some allocation, and therefore mandate would be appropriate if the council refused to allocate any funds.  However, the necessity of the funds and the amount of allocation is within the discretion of [the] council and mandate will [lie only] for a clear abuse of the discretion."), *reh'g denied*.

[10] Appellants cite *Loc. 1963 of United Auto., Aerospace, Agric. Implement Workers of Am., UAW v. Madison Cnty.*, 999 N.E.2d 949 (Ind. Ct. App. 2013), *trans. denied*, *Alexander v. Marion Cnty. Sheriff*, 891 N.E.2d 87 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*, and *Lake Cnty. Bd. of Commissioners v. Martinez*, 199 N.E.3d 366 (Ind. Ct. App. 2022), *trans. denied*.  In *UAW*, this Court found the commissioners and council, by entering into a collective bargaining agreement, exceeded their authority and encumbered the right of the elected recorder and assessor to appoint and discharge their deputies and employees.  999 N.E.2d at 958-959.  In *Alexander*, we noted the sheriff was charged with the care of prisoners in the county jail, that to carry out this function the Sheriff must provide a safe and secure manner for jail inmates to make phone calls, and that the parties did not dispute "that implicit in this charge is that the Sheriff has the authority, and in fact, the duty, to enter into contracts to carry out this function." 891 N.E.2d at 93.  In *Martinez*, we held that a sheriff had the authority to enter into a contract for the purpose of providing medical services to inmates so long as the funds were within the sheriff's approved budget.  199 N.E.3d at 368-373.  We cannot say that *UAW*, *Alexander*, or *Martinez* dictate that the trial court was required to enter the declaratory judgment requested by Appellants.

[11] We express no opinion as to any criminal actions or Appellants' ability to recover attorney fees in this or other actions involving the Council or Board.

Bailey, J., and Weissmann, J., concur.